CASE 37—PETITION—SEPTEMBER 26.

# Moss v. Meshew, &c.

APPEAL FROM HICKMAN CIRCUIT COURT.

1. SALE OF TIMBER-TREES DOES NOT PASS THE TITLE UNTIL THEY ARE MARKED OR DESIGNATED SO AS TO IDENTIFY THEM.
2. A sale of timber-trees upon vendor's land, in a number sufficient to make forty thousand staves, did not pass the title to any particular trees, nor give to the purchaser the right to enter and cut the timber without the consent of the vendor.

3. A sale of all the timber upon the vendor's land, to be cut on a par-
ticular part of the farm, suitable to make staves, does not pass the
title until the trees are marked and designated so as to identify
them.

4. When the trees sold are not so identified the vendor may maintain
an action of trespass against the vendee or his assignees for entering
upon his land and cutting and removing timber without his consent.

E. I. BULLOCK, . . . . . . . . . . .   For Appellant,

CITED

2 Duvall, 315, Brown & Long v. Childs & Co.
13 B. Monroe, 341, Cain v. McGuire.
4 Metcalfe, 373, Byassee v. Reese.
1 Parsons on Contracts, 441.
3 New Hampshire, 382, Davis v. Hill.
7 Dana, 59–61, Crawford v. Smith.
16 B. Monroe, 269.
Chitty on Contracts, 375, 377.

W. R. BRADLEY,  . .⎞
RODMAN & BRADLEY, . ⎠ . . . . . .   For Appellee,

CITED

1 Duvall, 387.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

George B. Moss, the appellant, and a man by the name
of Payne, on the 23d of November, 1868, executed a writing,
signed by each of the parties, by which the appellant "sold to
Payne white-oak trees enough on the appellant's farm to make
forty thousand pipe staves, at the price of two dollars per tree,
the timber to be cut on a designated part of the farm, and the
staves delivered in Columbus; Moss retaining a lien on the
staves for the payment of the money, and Payne agreeing to
make the staves as quick as the work could be done." Payne
and Stearman, the latter being a partner of Payne, on the
same day this contract was made, transferred by writing the
benefit of the same to the appellee, Meshew. In a short time
after the execution of the contract above alluded to the appel-
lant and Payne executed another contract, reading as follows,

viz.: "That on this day I have sold to Payne all the timber I have on land known as mine lying on Obion Creek, suitable for staves, for the sum of eight dollars per thousand, to be due and payable when twenty-five thousand staves are made and delivered on the bank of Obion Creek for shipment. I retain and hold said staves in my own name until said timber out of which said staves are made is paid for at the rates above mentioned. The said Payne obligates himself not to delay any time, but to employ hands and make the same up immediately. If said Payne stops work without settling according to contract, he forfeits all claim to the staves; and a cessation for one month amounts to a forfeit of said staves, unless by some unavoidable accident." This paper bears no date, and was on the 29th of March, 1869, transferred by Payne and Stearman to the appellee. Payne, as appears from the testimony, entered upon the land after the first contract was executed, and made ten or fifteen thousand staves, and then left the neighborhood or ceased to work. The appellees, Meshew and Hubbard, then entered upon the land under the contract made with Payne, and asserted their right by virtue of the assignment or transfer to Meshew of this contract to cut the timber and make the staves.

After the entry upon the land by appellees they attempted to haul off the staves, and did in fact take from the land the staves made, or many of them, against the protestations of the appellant. For the acts of the appellees in entering upon the lands of appellant, and cutting and carrying away his timber, these actions of trespass were instituted. The two actions were brought and tried together by the consent of parties.

The answer of the appellee, Meshew, contains several paragraphs, and to each and all of them the appellant filed a demurrer. The demurrer was overruled by the court to the first, second, third, and fourth paragraphs of the answer, and the propriety of this ruling will be first considered.

The answer alleges, in substance, that the appellee, Meshew, had the right to enter and cut the timber by reason of the transfer of the contract to him by Payne. There is no allegation in either of the paragraphs of the answer that the trees or timber had been delivered to the appellee or Payne, actually or constructively, or that the entry upon the land was made with the consent of the appellants. That a sale may be made of trees standing upon the land of the owner was settled by this court in the case of Cain v. McGuire (13 B. Mon. 341), and the case of Byassee v. Rees (2 Metcalfe, 372). In the latter case Byassee purchased of Waters one hundred trees standing upon his land, and the trees were selected and marked by Byassee. The court say that a sale of standing trees, in contemplation of immediate separation from the soil, is a constructive severance of them, and they pass as chattels. As the title to trees standing upon land and sold in this way vests in the purchaser, as in the sale of any other personal chattel, this contract relied upon by the appellee as a defense must be regulated and determined by the well-established principles of law applicable to the sale and delivery of personal property. A sale, when completed, passes the title to the purchaser, and if the property sold is destroyed, unless by the carelessness or design of the vendor, the purchaser sustains the loss. The difference between a sale and an agreement to sell is often overlooked even in judicial determinations. Parsons on Contracts, page 527, reads: "The property does not pass until the sale is completed, and it is not completed until the happening of any event expressly provided for, or so long as anything remains to be done to the thing sold to put it into condition to be sold, *or to identify it,* or discriminate it from other things." If appellant permitted Payne or the appellees, that is, consented that they should go upon his land and cut trees, even without designating the trees, then as to the trees cut the title passed, unless it was prevented from passing by

some clause of the contract retaining the title in the vendor. But this consent, or the delivery of the property under the contract, must be alleged in the action.

A sale of timber-trees upon appellant's land, in a number sufficient to make forty thousand staves, did not pass the title to any particular trees, nor give to the purchaser the right to enter and cut the timber without the consent of the appellant. So a sale of all the timber upon appellant's land, to be cut on a particular part of the farm, suitable to make staves, does not pass the title until the trees are marked and designated so as to identify them.

If A sells to B such of his fat hogs as are suitable for market, and before the hogs are selected by the vendor and vendee for the purposes for which they are sold *they die*, the loss is not with the purchaser. If after the contract was made between these parties the trees had been blown to pieces by a hurricane and rendered valueless, the loss would have been the appellant's, in the absence of a delivery either actual or constructive.

The answer filed by the appellee, Meshew, contained no valid defense to the trespass complained of by appellant, and the demurrer to each one of the four paragraphs should have been sustained. The court very properly sustained the demurrer to the fifth and sixth paragraphs of the answer, as they constituted no defense whatever to the action. The fifth paragraph alleges, in substance only, that the plaintiff has a doubtful title to the land on which the timber was cut; the sixth paragraph alleges that Payne, the party to the original contract, was by its terms entitled to the wood and blocks not used from the trees in making the staves. This formed no part of the contract, and if it did is not properly pleaded.

The defendant, Hubbard, by his answer denies the commission of the trespass, and this defense, if sustained by the proof, authorized the jury to find the verdict for him. The

testimony introduced upon the trial in behalf of the defendant shows that the appellees had commenced hauling the staves from appellant's land, and that he notified the driver of the teams of his right to their possession under the contract until they were paid for, and that he must leave them on the premises; and upon hearing appellant's objections the appellee, Hubbard, relying on his supposed legal right to carry them away by virtue of Payne's contract, persisted in taking them from the land.

The contract expressly gives to the appellant the right to retain the possession of the staves until they were paid for; they were at the time on his land and in his possession, and the entry upon the land, and taking the staves off by Hubbard or his driver after the notice, was a tortious act, and for which trespass could be maintained.

The answer of the appellee, Meshew, presenting no defense to the action, and the testimony of Hubbard's own witnesses making him guilty of the trespass, the court should have awarded the appellant a new trial.

The instructions have not been considered for the reason that no objections were made to their being given in the court below, nor are they incorporated in the bill of exceptions. (2 Duvall, —.)

For the reasons herein indicated the judgment of the court below is reversed, with directions to that court to set aside the judgment, and give to appellant a new trial, and for further proceedings not inconsistent with this opinion. Either party should be permitted to amend their pleadings.

Judge LINDSAY did not sit in this case.