CASE 82.—ACTION BY A. B. ASHER AGAINST THE FORD
LUMBER AND MANUFACTURING CO. FOR THE
CONVERSION OF TIMBER.—February 4.

# Ford Lumber & Mfg. Co. v. Asher

Appeal from Perry and Letcher Circuit Courts.

L. D. Lewis, Circuit Judge.

Appeals consolidated and judgments reversed.

Logs and Logging—Sale of Standing Timber—Effect of Failure to
Remove.—Plaintiff conveyed to defendant the right to cut
trees from the land of others from whom plaintiff had pur-
chased a right to cut the trees without limitation as to the
time of removal, and the deed to defendant provided that it
should remove the trees by March 1st unless prevented by
legal process, and that plaintiff transferred to defendant all
the benefits of his deeds from the landowners, and guaranteed
to him the necessary rights of way for getting out the logs
until March 1st.    Held, that plaintiff, not being the owner
of the land, could not object to defendant's failure to remove
the trees by March 1st, if he was not injured thereby, and
could not recover for trees removed after that date.

T. E. MOORE, JR., for appellant.

D. D. FIELDS & SON and MILLER & WARD of counsel.

POINTS AND AUTHORITIES.

1. Title to standing trees can be obtained by contract.    (War-
velle on Vendors & Purchasers, vol. 1, sec. 508.).
2. Construction of contract.    (Warvelle on Vendors & Pur-
chasers, sec. 402, sec. 128.)
3. Construction of Deed.    (Warvelle on Vendors & Purchasers,
secs. 399, 109, 444; "Cyc." 1552.)
4. Trees not removed in specified time revert to owner of

Ford Lumber & Mfg. Co. v. Asher (2 cases.)

land. (Green v. Bennett, 23 Mich. 464; Strasson v. Montgomery, 32 Wis. 52.)

DISHMAN & DISHMAN for appellant.

E. E. HOGG of counsel.

### POINTS AND AUTHORITIES.

Timber sold to be removed by a fixed time, is only a sale of the timber so removed by said time. In this case appellant contracted for certain timbers which were to be removed by a certain time. It failed to do so, but after the expiration of the time, without the consent of appellee, the owner, removed said timber, and thereby became indebted to appellee for the timber converted. (Chestnut v. Green, 27 Ky. Law Rep. 838; Jackson v. Hardin, 27 Ky. Law Rep. 1111; and authorities cited.)

"The defendant cut down more timber than he could remove within his time. He knew that his right to enter and carry away expired at a particular day. He attempted to overreach the letter of his covenant, and must be allowed to bear the loss without remedy." (Hoard v. Lincoln, 13 Me. 122; Bell County Land & Coal Co. v. Moss, 30 Ky. Law Rep. 8; Bowerman & Co. v. Taylor, 32 Ky. Law Rep. 671; Ky. Stats., sec. 1409, subsec. 13 and 14.)

MILLER & WARD for appellant.

### AUTHORITIES CITED.

Kenner v. Am. Contract Co., 9 Bush 202; Hoit v. Stratton Mills, 54 N. H. 452; Walker v. Johnson, 116 Ill. App. 145; Kemble v. Drewer, 35 Am. Dec. 364; Green v. Bennett, 23 Mich. 464; Strasson v. Montgomery, 32 Wis. 52; Macomber v. Detroit L. & N. R. R. Co., 32 L. R. A. 102; Pease v. Gibson, 6 Me. 84; Howard v. Lincoln, 13 Me. 123; Sattonstall v. Little, 90 Pa. 422; Utley v. Wilcox Lumber Co., 59 Mich. 263; Haskell v. Ayres, 32 Mich. 93, 3 Mich. 89; Gamble v. Gates, 92 Mich 510; Williams v. Flood, 63 Mich. 493.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

These two appeals, involving the same questions of

law, were ordered to be heard together. The appellee, Asher, was the plaintiff below in each case, and in each petition filed by him against the appellant company he alleged in substance that in August, 1903, he sold, and by deed conveyed to it, a large number of trees standing upon the land of different parties in the counties of Perry and Letcher; that by the terms of the contract, the trees were to be removed from the land by the 1st day of March, 1905, unless the company was prevented from so doing by legal process. He averred that on March 1, 1905, although the company had not been prevented by legal process from removing any of the trees from the land, there remained on the land on that date some 1,400 of the trees; that after the 1st of March the company, without right, unlawfully, wrongfully, and against his consent, entered upon the land, cut down and sawed the trees into logs, and removed the same from the land and converted them to its own use, whereby it became indebted to him for the conversion of the timber in the round sum of $7,025, for which amount he asked judgment.

At this point it is convenient to say that in July, 1903, Asher and the company entered into a contract by which he sold to it about 9,000 trees standing on land in the counties of Perry and Letcher. The contract stipulated that Asher was to convey the trees by deed of general warranty and to furnish rights of way for getting out the logs, but did not specify any time in which the trees or logs were to be removed from the land. In pursuance of the condition in the contract that the trees were to be conveyed by deed, Asher on August 15, 1903, executed and delivered to the company a deed whereby, in consideration of $46,670, he conveyed to it the 9,000 trees mentioned

in the contract. The deed recites the names of the persons from whom these trees were bought by Asher and the number bought from each, and provides that Asher is to deliver to the company all the conveyances and title bonds under which he holds the timber. It was further stipulated in the deed that "the party of the second part [Ford Lumber & Manufacturing Company] is to cut and remove the aforesaid timber by March 1, 1905, unless prevented by legal process; and the said Asher further assigns and transfers to the party of the second part all the benefits of any and all covenants in his various contracts and deeds above mentioned, and particularly grants and guarantees to the party of the second part all necessary rights of way for getting out said logs until said date March 1, 1905. To have and to hold all the foregoing property, to wit: Standing trees, felled trees, and saw logs, to the party of the second part, its successors and assigns forever, with covenant of general warranty." In its answers the company set up that all of the trees it bought were branded with the letter "A" and with the letters "J. D. W.," and all stood upon land belonging to the persons mentioned in Asher's petition from whom he had purchased them prior to July, 1903. It further averred that there was no condition in the deeds to Asher made by the owners of the land upon which the trees stood requiring the owner of the trees to remove the same from the land within any specified time, and that Asher had never owned or had any interest in the land upon which any of the trees stood; that the owners of the land had never made any objection to the removal of the trees or logs from the land by it; and that the condition in the deed that it was to remove the trees by March 1, 1905. was in-

serted only for the purpose of limiting Asher's guaranty to furnish rights of way for the removal of the timber, and did not limit the time in which it had the right to remove it. Each action was submitted upon demurrers to the answers, and, the demurrers having been sustained, the company declined to plead further, and thereupon judgment was entered for the amount sued for.

Briefly stated, it appears from these pleadings (1) that Asher did not at any time own any of the land upon which the trees he sold the company were standing: (2) that the trees Asher sold the company had been previously purchased by him from other parties who had granted to him the right without time limit to remove the trees from the land; (3) that Asher in the conveyance of the trees to the company assigned and transferred to it all the benefits and privileges with reference to the removal of the timber conferred upon him in the conveyances under which he held it; (4) that Asher at the time he sold the timber to the company was the unqualified owner of all of it, and had the right to enter upon the land upon which it was standing at any time for the purpose of removing it; (5) that the owners of the land did not object to the company entering upon it after March 1, 1905, or at any time for the purpose of removing the timber.

Upon these admitted facts, the company insists that Asher has not shown himself entitled to judgment for any amount against it, insisting that by his deed he conveyed to it the unqualified right and title to the timber; and, not being the owner of the land or liable in any way for the company's failure to remove the trees within a specified time, he is not in a position to maintain an action against it for not removing

them within the time mentioned in the deed. That the condition in the deed that "it was to cut and remove the timber by March 1, 1905, unless prevented by legal process," was not intended to confer upon Asher any cause of action against it unless he could show that he sustained some special injury or damage by reason of its failure to remove the timber within that time. On the other hand, Asher's contention is that he occupied the same relation to the company as if he was the owner of the land upon which the trees stood, and as such owner had sold the timber to it under a contract obligating it to remove the timber from the land by a specified time, and that as March 1, 1905, was the time stipulated in the deed in which the timber should be removed, it had no right after that time to enter upon the premises or take possession of or remove the timber; and hence was indebted to him for the value of the timber removed from the land and converted by it to its own use after March 1, 1905. He rests his right of recovery upon the cases of Chestnut v. Green, 120 Ky. 385, 86 S. W. 1122, 27 Ky. Law Rep. 838; Jackson v. Hardin, 87 S. W. 1119, 27 Ky. Law Rep. 1111; Bell County Land & Coal Co. v. Moss, 97 S. W. 354, 30 Ky. Law Rep. 8; Bowerman v. Taylor, 106 S. W. 846, 32 Ky. Law Rep. 671; Taylor-Brown Timber Co. v. Wolf Creek Coal Co., 107 S. W. 733. 32 Ky. Law Rep. 1015. The principle announced in these cases is that the sale of timber by the owner of the soil to be removed within a specified time is only a sale of so much timber as is removed within the time, unless there exist exceptional circumstances that might extend the license under the contract for a reasonable time after its expiration in order to enable the purchaser to remove the timber; but these cases

in our opinion have no application to the facts here presented.

Asher was not the owner of the land upon which the trees stood, and we know of no principle of law that would vest the title and ownership of the trees in Asher upon the failure of the purchaser to remove them from the land within the given time. Whether or not a stipulation in the contract forfeiting the rights of the purchaser to the trees upon his failure to remove them within a specified time would have the effect of restoring the ownership to the vendor if the contract was not complied with by the purchaser is not necessary to decide, as that question is not presented by the record. It is not contended by Asher that the ownership of the trees vested in him on March 1, 1905, under any particular condition to this effect in the contract. His theory is that he occupies the same relation as would the owner of land upon which trees were standing that had been sold under a contract giving the purchaser the right to remove them by a certain time. But the fatal defect in this theory is that Asher is not the owner of the soil, and it would be a most unwarranted extension of the rule that prevails between the owner of land and the purchaser of timber thereon to include Asher within its scope. Asher by his sale of the trees passed to the company not only all his title and interest in the trees, but the privilege to remove them granted to him by the owners of the land. As Asher did not own the land, or any interest in it except the timber and the right to remove it, all of which he sold and conveyed, it is no concern of his when the timber is removed. The failure to remove it by March 1, 1905, did not, as shown by this record, operate to the injury of Asher in any manner whatever. He was paid

the full purchase price of the trees at the time they were bought by the company, and, under the circumstances of this case, it would be a gross injustice to permit him to recover the value of the timber remaining on the land on March 1, 1905.

Wherefore the judgment in each case is reversed, with directions to dismiss the petition.