## Gabbard, et al. v. Sheffield, et al.

(Decided February 22, 1918.)

## Appeal from Breathitt Circuit Court.

1. Contracts—Construction—Intention of Parties.—The essential thing in construing a contract is to determine from it, the intention of the parties, and when the intention is ascertained, to enforce its provisions, in accordance with the intention.

2. Descent and Distribution—Inheritance.—An estate in lands may be divided by the owner, and separate estates carved out of the different elements, which go to make up the lands, and one may be the owner of the surface of the lands, another the trees standing upon it, and a third, the minerals under the surface, and each of the three be the owner of an estate of inheritance in lands.

3. Descent and Distribution—Inheritance.—An estate of inheritance may be created by a conveyance to one, his heirs and assigns, forever, of the trees standing upon land, with the right to enter at any time and remove the timber.

4. Descent and Distribution—Reservation of Timber—Inheritance.— Where one holding title to lands sells and conveys the lands, but, in his deed of conveyance, excepts from the conveyance and does not sell or convey the timber standing upon the lands, but reserves the same for himself, his heirs and assigns forever, with the right to enter and remove the same at any time, the owner does not lose his right to the timber by failing to remove it within a reasonable time, but it is such an estate as he may sell, devise, or it may pass by inheritance.

5. Logs and Logging—Sale and Conveyance of Standing Timber.— If one holding title to lands sells and conveys the same, but excepts from the sale and conveyance the timber upon the land, and reserves the right to enter and remove it, at any time, he may sell the timber, which was in existence when his sale of the land was made, to a vendee, and limit the time within which he shall cut and remove the timber, and it will be a sale of only so much of the timber as the vendee shall cut and remove within the time fixed, and at the expiration of that time, the remaining timber will be the property of the seller, and not the property of the owner of the soil.

6. Logs and Logging—Sale and Conveyance of Standing Timber.—A sale of standing trees does not convert them from realty into personalty, unless the same was made in contemplation of their immediate severance from the soil, and if sold in contemplation of their immediate severance from the soil, and the vendee does not remove them within a reasonable time, or within the time fixed in the contract of sale, they lose their character as personalty and become realty.

7. Logs and Logging—Sale and Conveyance of Standing Timber.— An owner of lands, who sells and conveys same, but reserves the timber thereon, and a time is fixed in the contract for its removal,

loses his right to the timber if he fails to remove it within the time fixed; or if no time is fixed for the removal, but, the contract for its reservation is made in contemplation of its immediate severance from the soil, it must be removed within a reasonable time, or the right to remove it ceases, but, if the contract for its reservation is made, without contemplation of its severance from the soil immediately or within a reasonable time, the timber constitutes an estate of inheritance in real estate, in the hands of the owner, and he does not lose his right to it by a failure to remove it.

SAM H. HURST and E. C. HYDEN for appellants.

W. L. KASH for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

On March 21st, 1917, the appellees, Caroline Sheffield, and her husband, James S. Sheffield, Clay Sheffield, Ben Sheffield, Morton Sheffield, Lula Pence, and Delia Rose, children of Caroline and James S. Sheffield, and with the two last named of whom, their husbands, Logan Pence and Robert Rose, joined, brought this action, in equity, in the Breathitt circuit court against the appellants, Samuel H. Gabbard, G. D. Heironymous and James F. West. The causes of action were set out in the petition in three paragraphs. In the first, the appellants alleged, that, they were the owners and in the actual possession of two certain tracts of land, and all of the timber trees growing and being thereon, and all of the logs, railroad ties and lumber thereon, and that without right and against their will and consent, the appellants had entered upon the lands and cut down many trees and were engaged in removing from the lands logs, railroad ties and lumber, which had been made from the trees, and converting same to their own use and depriving the appellees of their ownership of same, and were threatening to cut and remove all of the trees from the lands and to convert them to their own use. The appellees alleged certain grounds for an injunction, and prayed, that, the appellants be enjoined from further cutting and removing the trees, ties or timber made from them from the land. By a second paragraph, it was averred, that the appellants had removed from the lands and converted to their own use certain logs, ties and lumber since the 18th day of February, 1917, and asked a recovery of their value. A third paragraph

averred, that appellants, previous to February 18th, 1917, while engaged in hauling logs from the lands, and in the manufacture of same into lumber upon the grounds, had unreasonably misused the lands and thereby reduced their vendible value in the sum of five hundred dollars, and prayed for a recovery of that sum upon that account.

All of the averments of the petition were denied by answer, except the ownership of the surface of the lands by the appellees, and, in turn, the appellants averred, that they were the owners of the timber, the railroad ties and the lumber made from the timber trees, and were the owners of the right of ingress and egress to and from the lands and over the same, and the right to make tram roads and to enter upon the lands with machinery for the purpose of cutting, removing and manufacturing the timber trees into such products, as they desired, as well as to build houses, stables, and roads over the land, which were reasonably necessary to the cutting, manufacturing and removal of the timber from the land, and were the owners of the privilege, so to do, until the 18th day of February, 1918. The affirmative averments of the answer were denied by a reply. On the 11th day of April, 1917, upon the motion of the appellees and over the objection of the appellants, the court appointed a receiver, in the action, and directed him to forthwith take into his possession all of the timber trees upon the land, both standing and down, the railroad ties, tie cuts, and all the timber made from the trees and to make an appraisement and to report to the court all of the trees which were down, saw logs, railroad ties and timber. The appellants excepted to the judgment of the court and prayed an appeal to this court from the order appointing the receiver.

The only question for determination here is the soundness of the judgment of the court in appointing a receiver, and putting the timber trees, logs, and manufactured products, in controversy, into his charge, but the decision of this question makes necessary a consideration of the facts, in order to ascertain whether the appellees, upon whose motion the receiver was appointed, have shown that they have or probably have "a right to, a lien upon, or an interest in" the property in controversy, which would justify the court in taking the property from the possession and control of the ap-

pellants and holding it from their use and control during the pendency of the action. If appellees failed to show, in the language of section 298, Civil Code, that they had or probably had "a right to, a lien upon, or an interest in the property," in controversy, the court was in error in putting it into the possession of its receiver and taking the use and control of it from the owners.

The undisputed facts, as developed by the evidence upon the motion for the appointment of a receiver, are as follows:

James S. Sheffield was the owner, in fee, of the lands, and transferred them to one Nathan Day, by what appeared to be a deed conveying the title to Day. Thereafter, Sheffield sold and conveyed the lands to one C. J. Little. Day sought possession of the lands under his deed, but after considerable litigation the deed, which Day held, was adjudged to be a mortgage. In this litigation the deed from Sheffield to Little was, for some reason, which the record does not show, set aside, but he had, previous to that time, paid all or a portion of the consideration for the conveyance of the lands to him. Sheffield, also, became indebted to Little, on account of funds furnished by Little for the benefit of Sheffield during the litigation with Day. Thereafter, on the 11th day of April, 1906, Sheffield and Little entered into a transaction, by which, in consideration of the sum of three thousand six hundred dollars, as expressed in the deed, Sheffield and wife conveyed the lands to Little. The three thousand six hundred dollars, which Little was to pay Sheffield for the lands, was made up, in part, of the amount of the Day mortgage lien upon the lands and the sums, which Sheffield owed Little in the way of the amounts he had formerly paid for the land, and the sums expended by Little for the benefit of Sheffield in the litigation with Day. The debt to Day and the sums Sheffield owed Little amounted, together, to the sum of twenty-eight hundred dollars, which left Little owing Sheffield the sum of eight hundred dollars upon the purchase price of the lands. The eight hundred dollars was paid by Little, at the same time the land was conveyed to him, by executing a deed of conveyance to Caroline Sheffield, the wife of James S. Sheffield, and her children, Clay, Ben, Morton, Lula, and Delia Sheffield, by which he conveyed to them the lands, with a title of general warranty, but excepted from the

effect of the conveyance and reserved to himself and his heirs, forever, all the timber, coal, oil, gases and all other mineral substances, clays, etc., and subterranean products of any and all kinds, in, upon and under the lands, together with the customary rights of ingress and egress for the purpose of obtaining, manufacturing and removing the excepted things. At the same time, Little and Caroline Sheffield entered into a written contract, by which they agreed that in order to more clearly state the rights, which Little retained in the timber upon the land, it was agreed, that the grantees in the deed were to have the privilege of using such of the coal, as they desired for domestic purposes, and the right to cut and use any of the timber trees, under ten inches in diameter, necessary for rails for fencing purposes, and any of the timber not merchantable, for fuel. On the 18th day of February, 1907, Little sold and by a deed of that date conveyed to the Parkersburg Tie & Timber Company all of the timber of every kind and description standing, lying or being upon the lands, together with the right of ingress and egress to and from and over the lands to remove the timber, and further provided in the deed, that the vendee should have a period of ten years from that date, in which to cut and remove the timber. Thereafter, the Parkersburg Tie & Timber Company sold and conveyed its property and rights under the deed to another, and thereafter it passed through the hands of several purchasers, until it became the property of the appellants. Each of the conveyances, as well as the one to the appellants, limited the time for the removal of the timber to not later than the 18th day of February, 1917, the time within which, it was to be removed under the deed from Little to the Parkersburg Tie & Timber Company. The appellants began operations upon the lands in 1916, but finding, that, they would not be able to finish the removal of the timber before February 18th, 1917, the time limit fixed in the deed to them, they entered into a contract with Little, who, for a consideration of one hundred dollars, sold to them the right to continue and remove the timber, at any time, before the 18th day of February, 1918, and provided in the deed executed to them, that they could exercise the right to enter and remove the timber to the extent of the terms of the exception in the deed

from him to Caroline Sheffield and children, of date April 11th, 1906.

It seems from the petition that appellees concede the right of appellants to enter upon the land and exercise the rights in regard to the cutting, manufacture and removal of the timber, as expressed in the exception contained in the deed from Little to them, of date April 11th, 1906, up and until February 18th, 1917, the time fixed by Little in his deed to his original vendee for the removal of the timber, but deny his authority to sell or convey an extension of time to appellants beyond that date for the removal of the timber, and insist that Little, having sold his entire interest in the timber and limited the time for its removal, that when that time expired, if any timber had not been removed, it became the property of the appellees, as the owners of the soil and would not be the property of Little, who was the appellants' remote vendor of the timber.

This makes it necessary to determine what estate Little had in the land, by virtue of the deed executed to him by Sheffield and wife, on April 11th, 1907, and the deed, which he executed to appellees on the same date. The deed from Sheffield and wife to Little, considered alone, vested him, with the fee simple title to all of the lands embraced by it and to every constituent part of it. Holding title to all of the lands in fee, he could sell and convey such an estate in them as he chose, and except such an estate out of them, as he chose, and retain the title to the excepted portion in himself. This much is conceded, but it is insisted, that the deeds and the written contract between Little and Caroline Sheffield and children were all made at the same time, and were all emanations of one contract and only express different phases and conditions of the same contract and should be construed, together as making one contract, and when so construed it was a sale by Sheffield to Little of the timber, coal, oil, gases, clays, and other subterranean products in the land, and that in the sale of the timber, it was contemplated that it should be severed from the surface immediately, and for that reason the timber was converted into personalty and there being no time fixed in the deed when it would have to be removed from the land, it would have to be removed within a reasonable time or else it would become again real property, and the ownership fixed in the owners of the

soil, and Little, by the sale of it to his vendee, had fixed ten years from the date of his sale, as the reasonable time contemplated for its removal, and the timber not having been removed within that time, the right of Little or any vendee of his to remove it had been lost, and for that reason, he was without authority to sell to appellants an extension of time for the removal of the timber beyond the time fixed by him. Upon the other hand, it is contended for appellants, that Little was the owner of the timber and that, as such, it was an estate in real estate, and when he made a sale of it and fixed the limit of ten years in which the vendee should remove it, that it was a sale of only so much of the timber as was removed within that period, and any timber, remaining after that period had expired, was the property of Little, and being such owner, he had the right to give the appellants an extension of time in which to cut and remove it.

Whether the two deeds were the expression of one contract only, or whether the evidence of two distinct contracts, it seems to be, under the peculiar facts of this case, immaterial. If one separate transaction, the deed from Little to the appellees was that of an owner of the land selling and conveying to a vendee, a certain estate in the lands, and excepting and retaining for himself another and distinct estate in the lands, and of this there can be no doubt. If both deeds are to be considered, as one transaction, and the outgrowth of one contract, it is very clear, that the parties, by the contract, intended to vest the title to all of the lands and everything, which went to make up the lands, in Little, and to place him in the position of an owner with power to sell and convey the surface of the land and except from the sale and not convey the timber upon the surface and the coal, oil, gases, clays, etc., beneath the surface, and thus retain the title thereto. The essential thing in construing a contract is to determine from it, if the writing is unambiguous, the intention of the parties, and when the intention is ascertained, to enforce its provisions according to such intention. If the intention of the parties was not, as above stated, to vest the entire estate in the lands, in Little, as one of the elements of the contract, there was no reason for the conveyance of the lands in their entirety to Little, as the Sheffields could have conveyed to him the things excepted by him in the conveyance by him to them, and put such limita-

tions as to time upon his right to cut and remove the timber as they should agree upon, as well as any other conditions agreed to. It being the intention of the parties that Little should occupy the status of a title holder to the lands in their entirety, and in the deed, which he executed to appellees for the surface of the lands should be in the position of title holder, and not in the position of a purchaser, the deed executed by him to appellants can only be considered as the act of the owner of the entire estate, which Sheffield had made him, and a conveyance by him to the appellees of a certain estate in the lands and an excepting by him of the interests in the lands, which were excepted from the operation of the deed. That an estate in lands may be divided by the owner and separate estates carved out of different elements, which go to make up the lands, there is no doubt. One may be the owner of the surface of the land, another the trees standing upon it, and another the minerals under the surface, and all of them be the owners of lands. In Kincaid, etc. v. McGowen, etc., 88 Ky. 91, it was said:

"Minerals in place are land. They are subject to conveyance. The surface right may be in one man and the mineral right in another. Both in such a case are landowners. They own separate and distinct corporeal hereditaments."

"The owner of land may convey a surface estate in fee in it and reserve to himself an estate in fee in the minerals, or any particular species of them, in which case the vendee holds a distinct and separate estate in the surface, or soil, and the vendor holds a distinct and separate estate in the minerals. By this severance each estate is subject to the laws of descent, of devise, and of conveyance."

This doctrine has been approved by this court, and in Hays v. Wicker, 161 Ky. 706, and in Webb v. Webb's Guardian, 178 Ky. 152, was applied to an estate in lands consisting of the standing timber trees thereon, as a distinct and separate estate from the surface of the lands. In 13 Cyc. 651, the text is:

"But an estate in inheritance is created by a grant to one, his heirs and assigns, of all timber standing and growing in a close, forever, with the right at any time to enter and remove the same."

If an estate of inheritance, distinct and separate from the surface of the land, can be created in the ownership of trees standing upon the land, by a grant, there is no logical reason, why an owner of land may not sell and convey the land, excepting the timber trees from the conveyance and thus retain the ownership of them, and an inheritable estate be created out of them, distinct and separate from the other constituent elements of the land and so doing, remain the owner of an estate in land, as standing trees are real estate, unless they have been sold with the intention of an immediate severance from the soil. Dils v. Hatcher, 69 S. W. 1092; Asher Lumber Co. v. Cornett, 63 S. W. 794; Bell County Land & Coal Co. v. Moss, 30 K. L. R. 6; Byassee v. Reese, 4 Met. 371; Tilford v. Dotson, 21 K. L. R. 333; Cain v. McGuire, 13 B. M. 341; Oats v. Yeargin, 115 S W. 794; Moss v. Mishen, 8 Bush 187; Cardwell v. Alwater, 15 R. 570. The rule by which standing trees, which are sold in contemplation of immediate severance from the soil, are converted from realty into personalty, is founded upon the equitable doctrine, that, that which was intended to be done will be considered as having been done. Hence, where standing trees have been sold by the owner of the land, but not, in contemplation of immediate severance from the soil, their character is not changed from realty to personalty, and if sold in contemplation of immediate severance from the soil, and they are not removed within a reasonable time or within the time fixed in the contract for their removal, they cease to be chattels and are restored to their position as real estate. Bell County Coal & Land Co. v. Moss, supra. The appellees having invoked as applying to the facts of this case, the doctrine, that where an owner of lands makes a sale of the standing trees thereon, in contemplation of their immediate severance from the soil, but no time is fixed in the contract within which the trees are to be removed, the purchaser has only a reasonable time, within which to cut and remove the trees, and that it is a sale to him of only such of the timber as he may cut and remove within a reasonable time. It has been continuously held, that when an owner of land sells certain trees upon it and a time is fixed in the contract for their removal, or the trees are sold in contemplation of their severance from the soil, but no time is fixed in the contract within which it is to be done,

it is a sale of only so much of the timber cut and removed within the time fixed, or so much of it as is cut and removed within a reasonable time, when a time has not been fixed for its removal by the contract. Chesnut v. Green, 130 Ky. 385; Jackson v. Hardin, 87 S. W. 1119; Taylor-Brown Timber Co. v. Wolf Creek Coal Co., 107 S. W. 733; Vincent v. Haycraft, 158 Ky. 845; Oats v. Yeargin, 115 S. W. 794; Morris v. Sanders, 63 S. W. 733. This rule does not, however, have application under the peculiar facts of the instant case, as we have heretofore held, that, it was not a sale of the timber by the owner of the land for severance from the soil or within a time fixed by the contract, but, the timber is an estate excepted and retained by the owner of the soil, when he sold and conveyed the other interests in the land. In the deed from Little to appellees, after making the necessary statements to convey the lands to them, an exception is made to the estate conveyed by the deed, and which, as far as is necessary to be stated, is as follows:

"Excepting and reserving, however, to the parties of the first part, their heirs and assigns forever, all the timber, coal, oil, gases and other mineral substances, clays and subterranean products of any and all kinds, in, upon and under the above described tracts and parcels of land. . . ."

Then follows the provisions of the deed as to the grantor's right of ingress and egress deemed necessary to remove the things excepted, which rights it is said, that he may exercise at any time the "grantor, his heirs and assigns," may elect. There is no time fixed or mentioned within the deed within which the grantor, his heirs and assigns, are required to cut and remove the timber, or to dig the coal or bore for gas or mine for the clays, except the provision that they may do so at any time. The same language is used as applying to the right to cut and remove the timber as applies to the coal, oil, gases and clays excepted from the conveyance. These articles, including the timber, are all excepted from the conveyance and are not sold or conveyed and the title and ownership are expressly reserved to the "grantor, his heirs and assigns, forever." While there is a technical distinction between an exception and a reservation in a deed, in this one, they have the same

signification, and the word "reserving," as used in the deed in connection with its context, can have no other meaning than that the things mentioned in the exception or reservation are excepted and not sold, but the title to same is retained in the "grantor, his heirs and as-signs forever." It is true, that where a contract for the sale of standing timber by the owner of the soil fixes no time within which the timber sold or reserved is to be cut and removed, the intention of the parties as to whether the timber is sold in contemplation of its being removed from the soil, within a reasonable time may be ascertained from facts not appearing in the written agreement, as the situation of the parties and the cir-cumstances surrounding them at the time of the con-tract may be looked to for that purpose. Hicks v. Phil-lips, 146 Ky. 305; Baustic v. Phillips, 134 Ky. 730; Hounsheld v. Miller, 153 Ky. 530; Ky. Coal & T. Dev. Co. v. Carroll H. Co., 154 Ky. 531. There is nothing in the evidence as to the situation of the parties or the cir-cumstances surrounding them at the time the deed was executed to and accepted by the appellees, which would indicate that the parties to the deed contemplated that the timber would be cut or removed immediately or within any reasonable time thereafter, and the written agreement executed at the same time, by which it was agreed that appellees were to have "all the coal from the lands needed for their domestic purposes and all timber under ten inches in diameter necessary for fence rails, and any timber not merchantable for fuel" rather strengthens the view above expressed, that the written contract and deeds fully set forth the entire understand-ing between the parties. Two of the appellees testified, that at the time of the transaction Little said that he would remove the timber from the land within a year or two, but this is denied by Little, and the writing evi-dencing the contract between the parties is contradic-tory of any such understanding, and parol evidence can not be held to contradict the terms of a written contract, in the absence of any plea of fraud or mistake. There is no pretense that the deeds failed to contain the con-tracts by reason of any fraud or mistake.

Hence, this case seems to fall within that line of cases of which Baustic v. Phillips, *supra,* and Hicks v. Phillips, *supra,* are two. In the latter case, it was held, that where a grantor in a deed conveying land reserves

the timber on a part of the land, and the deed fixes no time for the removal, and there is nothing in the stipulations of the deed nor in the situation nor circumstances surrounding the parties at the time the contract was executed to show that a severance of the timber from the soil was contemplated, the title to the timber then standing upon the land remains in the grantor, and is not lost by his failure to cut and remove the timber within a reasonable time. The one, who accepts a deed with such a reservation, knowingly assumes the burden and can not complain. In Baustic v. Phillips, *supra,* it was said:

"Where the vendor of land reserves the trees growing thereon, or any portion thereof, they remain his property, and as against the purchaser of the land he has a right to enter on the land and without doing any unnecessary damage cut and remove the timber, or he may sell such right or give license to another to exercise it." In such states of case the use of the word "reserves" has the same meaning as except, and the reservation is in realty an exception.

Hence, it must necessarily follow from the foregoing that Little was the owner of an estate in these lands, consisting, among other things, of the timber thereon, at the time he executed the deed to appellees; that such an estate was one in realty, and that it was such one as he might sell or devise by will or pass by inheritance to his heirs in the event of his death, intestate. When he made the conveyance of the timber to the Parkersburg Tie & Timber Company and fixed a limitation of ten years within which it could cut and remove the timber, by analogy to the cases, which hold that a sale of standing timber by the owner of the soil, with a time fixed in the contract within which it is to be cut and removed, is a sale of so much of the timber, only, as may be cut and removed within that time, and such of the timber as remains uncut at the expiration of that period is the property of the owner of the soil, it would seem that the sale by Little to the Parkersburg Tie & Timber Company was only a sale of so much of the timber as it would cut and remove within the time fixed, and at the expiration of that time, the remaining timber would be the property of Little, and as such owner he would be authorized to sell a further extension of time to a vendee within which to cut and remove it. This is evident,

when, it is considered that previous to the making of the sale by Little to the Tie Company, that he had an unlimited time within which to cut and remove the timber, and the limitation of time fixed in the sale of it was only a sale of a portion of his estate in the land and not of his entire interest. The estate in the timber being separate and distinct from that owned by appellees in the surface of the land, and a right only had been parted, with by Little to his vendee to cut and remove timber thereon for the period of ten years, if Little is not the owner of the estate in the timber remaining, who is the owner thereof? The appellees never have, at any time, owned any interest in the timber, because the estate in the timber had been carved out of the estate in the lands before the appellees became the owners of the surface of the land, and there is no way suggested by which, since that time, they have acquired any title or interest in the timber, except the interest acquired by them by the written contract between them and Little, at the time the land was conveyed to them. The cases of Ford Lumber Co. v. Asher, 131 Ky. 796, and Begley v. Consolidated Timber Co., 152 Ky. 496, are differentiated from the instant case, as not being based upon a similar state of facts as exist here. Hence, there does not appear any way in which appellees have ever obtained any title or right or probable right to any of the timber or any interest therein, except such as was necessary to make rails and for fuel purposes, as set forth in the written contract between them and Little, dated April 11th, 1907. This contract, however, does not seem to have ever been recorded until after appellants bought the timber, and no notice of it is shown to have been brought to them, but it was recorded before they secured the extension of time, but it does not appear that any of the timber cut by them was such as appellees were entitled to under the writing. Having failed to show that they have or probably have any right or title to, lien upon or interest in the timber, which appellants were cutting and proposing to cut and remove, the court was in error in placing it in the hands of a receiver.

The judgment is, therefore, reversed, and cause remanded for proceedings consistent with this opinion. The whole court sitting.