## GRESS *v.* ROBERTS.

</div>

1. Where an owner of land conveys green timber suitable for sawmill purposes, and his vendee contracts with one to manufacture it into lumber, and in the contract refers to the conveyance from his vendor for description of the timber conveyed, and the contractor cuts and removes dead timber from the land, in an action by the owner of the land against his vendee for the trespass of the contractor there can be no recovery unless it be shown that the vendee authorized or ratified the trespass of the contractor.

(*a*) The evidence was insufficient to connect the vendee with the trespass of the contractor.

2. Testimony of the contractor to the effect that he cut all the timber, and the testimony of another as to his declarations, made dum fervet opus, that he claimed the right to cut the dead timber, would be competent if the defendant's connection with the trespass be shown; otherwise the testimony would be irrelevant.

<div align="center">

April 18, 1913.

</div>

Equitable petition.   Before Judge Thomas.   Berrien superior court.   June 29, 1912.

*Knight, Chastain & Gaskins,* for plaintiff.
*Hendricks & Christian,* for defendant.

Evans, P. J.   Stephen Roberts conveyed to Morgan V. Gress "all and singular the timber suitable for sawmill purposes growing" on certain land.   Gress filed a petition against Roberts to enjoin him from cutting and removing the timber embraced in

his conveyance, and Roberts by way of cross-petition alleged that Gress was cutting and removing the dead timber on the land, which was not included in his lease. On exception to the grant of an interlocutory injunction, the timber lease from Roberts to Gress was construed to convey to the vendee only the green timber which at the date of the lease was suitable for sawmill purposes. *Roberts v. Gress,* 134 *Ga.* 271 (67 S. E. 802). In his cross-petition Roberts claimed damages of Gress for a trespass, which was alleged to consist in cutting and removing the dead timber from the land; and on the issue thus made a verdict was returned in favor of Roberts. The court refused a new trial, and the movant excepted.

1. The dead timber was cut by Carter and Lewis, and the controlling point in the case is the liability of Gress for their trespass. It appears from the record that the timber lease from Roberts to Gress was dated October 16, 1902, and ten years were allowed by it for the cutting and removal of the timber. Afterwards Gress contracted in writing with Carter and Lewis "to cut all timber suitable for sawmill purposes into lumber for the benefit of the said party of the first part, on the following described leases, to wit: lease from Stephen Roberts to Morgan V. Gress, dated October 16, 1902, to timber" on the locus in quo, and lease from another person to timber on certain land lots, and also timber on other land lots not included in the aforementioned leases. It was further provided that Carter and Lewis were to manufacture the timber into lumber and ship the lumber to Gress upon specified terms. There was no evidence tending to show Gress's connection with the trespass of Carter and Lewis beyond his contractual relation with them. A fair construction of the contract of Gress with Carter and Lewis is, that he contracted with them to manufacture into lumber certain timber owned by him. In describing the timber on the Roberts land he expressly referred to timber suitable for sawmill purposes as embraced in his lease from Roberts. His contract with Carter and Lewis authorized them to cut from the Roberts land only such timber as was conveyed by Roberts to Gress. If they cut timber not embraced in the contract, they had no authority under the contract for their act. They were independent contractors, and Gress is not responsible for their trespass, unless he adopted or ratified it. *Parker* v. *Waycross & Florida R. Co.,* 81 *Ga.* 387 (8 S. E. 871). It was not shown that any lumber

manufactured from dead trees was received from Carter and Lewis by Gress, or, if any was received, that Gress knew or had notice that the same was manufactured from timber cut on the Roberts land. There was a total lack of evidence to show that Gress ever knew of or· ratified the trespass of Carter and Lewis, and the verdict is without evidence to support it.

2. The testimony of Carter to the effect that his firm cut all the timber suitable for sawmill purposes, and the testimony of Roberts that Carter declared, while engaged in cutting the dead· timber, that he had a lease to it and was going to cut it, would have been admissible if the evidence had connected Gress with the trespass; but in the absence of such proof the testimony was irrelevant.       *Judgment reversed. All the Justices concur.*