## REYNOLDS *v.* WINGATE.

1. A grant of "all of the timber of every kind and description standing, growing, and being upon" certain described tracts of land, conveys only the live timber on said lands, and does not convey dead timber on said lands, nor dead trees which had fallen and were lying on said lands at the date of said grant.

2. Where in such conveyance the grantors reserved the right to use such part of said bargained timber as might be required to make certain repairs upon the plantation on which the timber stood, and also reserved a tract of timber containing approximately sixty acres, and where one of said grantors, having become the sole owner of said lands, afterwards conveyed to the grantee in the first conveyance all the timber reserved in the first conveyance, except "all pine timber" on three acres of said lands, and "all hardwood" on a certain described tract, and where in the second conveyance the grantor modified the reservation of timber for plantation purposes specified in the first conveyance, so as to make it applicable only to the dead timber on a certain part of the plantation, the grantee under the two conveyances acquired, after the execution of the second conveyance, all the timber standing on all the lands, except the pine timber on the three-acre tract, the hardwood on the strip of land between the road south of Wingate's dwelling and the field south of said road, and so much of the dead standing timber as might be needed for the plantation purposes specified, but under said conveyances did not acquire title to dead trees which had fallen prior to the execution of the contract of April 5, 1923.

3. In the construction of deeds and other instruments the word "and" is sometimes used to mean "or," and vice versa, in order to effectuate the intention of the parties to such instruments; but these words are in no sense interchangeable terms, but on the contrary they are used for purposes entirely dissimilar, and the substitution of one of these words for the other should never be resorted to except for strong reasons, and when the context favors such substitution. Under this rule the word "or" should not be substituted for "and" in the grant in the lease of April 5, 1923, of "all the timber . . standing, growing, and being upon" described lands.

No. 5678.    JUNE 18, 1927.

Petition for injunction. Before Judge Custer. Baker superior court. September 11, 1926.

---

And 2 C. J. p. 1338. n. 61, 62, 63; p. 1342, n. 79.
Logs and Logging, 38 C. J. p. 144, n. 5; p. 150, n. 16; p. 159, n. 62.

*Milner & Farkas,* for plaintiff.

*Benton Odom* and *Pottle & Hofmayer,* for defendant.

HINES, J.   On April 5, 1923, R. L. Hall and M. B. Wingate by their lease sold and conveyed to the Blakely Hardwood Lumber Company, "all of the timber of every kind and description standing, growing, and being upon" certain described tracts of land.   The grantors covenanted and agreed that during the life of the lease they would "not convey in any manner to any other person, corporation, or partnership a right of way of any character whatever to be used by such person, corporation, or partnership for the purpose of hauling over said  . .  described premises any timber of any kind, or the manufactured products thereof."   The lease further provided that the grantors "shall have the right to use of said bargained timber such part thereof as may be required for making shingles necessary to repair the roofs of houses now upon said plantation, or necessary fence-posts upon said plantation, and otherwise necessary to keep said buildings in repair, but shall not have the right to saw any of said timber into lumber for any purpose."   The grantors reserved "a tract of timber, containing approximately sixty acres, adjacent to the residence occupied by the said M. B. Wingate."   The Blakely Hardwood Lumber Company transferred this lease to J. W. Reynolds.   Thereafter Wingate acquired the title of Hall to the lands embraced in said lease.   On December 17, 1925, Wingate executed to Reynolds another conveyance.   This instrument recited the lease from Hall and Wingate to the Blakely Hardwood Lumber Company, of April 5, 1923, and the transfer thereof to Reynolds, and referred thereto for its contents.   This instrument further recited that Wingate had become the sole owner of the Newell place, the timber on which was conveyed by the above lease of April 5, 1923, and that under the terms of said lease Wingate had reserved to himself a tract of timber of approximately sixty acres, adjacent to his residence, and had also reserved certain timber for plantation purposes, and that Reynolds desired to purchase said reserve timber, with certain exceptions which will be hereinafter stated.   By said instrument, after said recitals, Wingate, in consideration of $3000, sold and conveyed unto Reynolds "all timber as reserved in said contract dated April 5, 1923," except "all pine timber" on three acres in front of the house of Wingate, and more fully described

in said instrument; and "also all hardwood on a certain strip of land between the road south of the house occupied" by Wingate "and the field south of said road." This instrument further provides that "Also the reservation as to timber for plantation purposes is modified so as to be applicable only to the dead timber on that part of the place owned by" Wingate.

Reynolds filed his petition against Wingate, in which he alleged that the latter was cutting, sawing, and removing from said land logs and timber, and in which he prayed for an injunction restraining Wingate from so doing. The trial judge enjoined Wingate from cutting any of the standing timber upon the lands described in said lease of April 5, 1923, except for use for plantation purposes, as provided in said lease contract, and denied an injunction restraining Wingate from cutting dead logs which had fallen and were lying on the ground when said lease contract of April 5, 1923, was executed. To this judgment Reynolds excepted, upon the ground that the judge erred in holding that the dead timber which had fallen prior to April 5, 1923, was not included in the conveyances hereinbefore referred to, whereas said conveyances were clear and unambiguous, and conveyed all of the timber, whether standing or fallen.

1. The lease of April 5, 1923, is of "all of the timber of every kind and description, standing, growing, and being upon" the tracts of land described in said lease. Does this instrument convey trees which were dead and which were standing on the land, and trees which were dead and had fallen and were lying upon the ground at the date of this lease? In *Dickinson* v. *Jones,* 36 *Ga.* 97, 104, it was said: "Timber is used technically to denote *green* wood of the age of twenty years or more, such as oak, ash, elm, beech, maple, and with us would include walnut, hickory, poplar, cypress, pine, gum, and other forest trees." In *Handcock* v. *Massee & Felton Lumber Co.,* 127 *Ga.* 698 (56 S. E. 1021), the grant was of "all and singular timber suitable for sawmill purposes growing on . . described lots of land." In that case the plaintiff contended that this description included only the green timber, basing his contention upon the technical definition of the word "timber" and the use of the word "growing." The defendant contended that the language, "all and singular timber suitable for sawmill purposes growing" on the described land, was more com-

prehensive in meaning, and included all timber suitable for saw-mill purposes at the time of the execution of the lease, whether green or dead, and that the word "growing" was identical in meaning with the word "being." This court, speaking through Justice Beck, said: "While there is some confusion in the definition of the word 'timber,' we think that, limited as it is by the further definitive term 'growing,' the contention of the plaintiff is the sounder of the two positions taken by opposing counsel." In *Roberts* v. *Gress*, 134 *Ga.* 271 (67 S. E. 802), the grant was of "all and singular the timber suitable for sawmill purposes, growing on" described lots of land. This court, speaking through Justice Evans, said, "The timber conveyed by the lease embraced only the green timber which was at the date of the lease suitable for saw-mill purposes. Dead trees, whether standing or felled, did not pass under the terms of the lease." In that case it was further held that "Growing trees suitable for sawmill purposes at the date of the lease passed thereunder, and there was no reversion to the vendor of any part of the growing trees of that character which afterwards may have died." The above rulings were based upon *Handcock* v. *Massee &c. Co.,* supra. See *Gress* v. *Roberts,* 139 *Ga.* 795 (78 S. E. 120). In *Adel Manufacturing Co.* v. *Mc-Dermid,* 150 *Ga.* 238 (103 S. E. 223), said company claimed that on January 23, 1917, one Whitehurst had executed and delivered to it a lease by which he conveyed to that company the "timber suitable for sawmill purposes" on a described tract of land. After the lease was executed and recorded, Whitehurst sold the land to McDermid, who took possession. McDermid averred that the lease under which the plaintiff claimed the right to cut and manu-facture the timber had, since its execution, been altered and changed by striking from the lease the word "growing," wherever it appeared in connection with the words "timber" or "trees" in said lease. This court, speaking through Justice George, said: "Whether the lease as executed conveyed only the growing timber suitable for sawmill purposes, as contended by the defendant, or whether it conveyed all timber suitable for sawmill purposes, as contended by the plaintiff, is, under the evidence, a question of fact. The evidence for the defendant tended to show that the lease as executed conveyed only the growing timber suitable for sawmill purposes. In this view of the matter, the interlocutory

order, in so far as it enjoined the plaintiff from cutting, felling, or removing any of the dead timber from the land, even though such timber were suitable for sawmill purposes, was authorized under the pleadings and evidence."

When the grant is of "timber," without qualifying, limiting, or definitive words, the meaning of that word is not always invariable. It may designate wood suitable for building houses, or ships, or for use in carpentry, or trees cut down and squared, or capable of being squared or cut into beams, rafters, boards, and other lumber, or growing trees suitable for constructive uses, or trees generally. *Pennington* v. *Avera,* 124 *Ga.* 147 (52 S. E. 324). In *Vandiver* v. *Byrd-Matthews Lumber Co.,* 146 *Ga.* 113 (90 S. E. 960), the grant was of "all the timber of whatever kind and description now growing or being upon" a described tract of land. In that case, this court again dealt with the meaning of the term timber, and held that "The subject-matter of the grant is timber and includes all trees standing on the land that are suitable, at the time of the grant, for use in the manufacture of lumber or material for building, manufacturing, and kindred purposes." It will be noted that the grant in that case was of all timber "growing or being upon" the described lot of land. This court held that such grant included all trees standing on the land that were suitable, at the time of the grant, for use in the manufacture of lumber or material for building, manufacturing, and kindred purposes. Such a grant includes, according to this decision, all trees standing on the land at the time of the grant, suitable for said purposes, whether living or dead. In *McRae* v. *Smith,* 164 *Ga.* 23 (137 S. E. 390), we again considered the meaning of the word "timber," and held that a grant of all timber, without limiting, explanatory, or definitive words, would include all trees growing or standing on the land suitable for the purposes aforesaid. The grant which we are considering is not a grant "of timber" without explanatory or definitive words. It is a grant of "all of the timber of every kind and description standing, growing, and being upon" the designated tracts of land. The language, "all of the timber of every kind and description," when construed in connection with the definitive terms "standing" and "growing," means that the grant is of all trees of that character and description, and not of all trees standing or being upon the

described tracts of land. We are of the opinion that this grant did not convey dead trees standing on the land at the date of the execution of this lease, and certainly the grant did not embrace dead trees which had fallen and were lying upon the land at the time this lease was executed.

2. This brings us to consider the effect of the deed from Wingate to Reynolds, of December 17, 1925. This conveyance recites that Wingate, under the lease of April 5, 1925, had "reserved to himself a tract of timber on approximately 60 acres adjacent to his residence, and also reserved certain timber for plantation purposes," and that Reynolds desired to purchase from Wingate such reserved timber, with certain exceptions. After the above recitals, this instrument contains this provision: "Now, therefore, in consideration of the premises and of three thousand dollars," Wingate "does hereby sell and convey unto" Reynolds "all timber as reserved in said contract dated April 5, 1923." Then follows the reservation of all pine timber on a described tract of three acres, and all the hardwood on a certain strip of land between the road south of Wingate's dwelling and the field south of said road. This instrument then modifies the reservation as to timber for plantation purposes, contained in the lease of April 5, 1923, so as to make said reservation apply only to the dead timber on that part of the place owned by Wingate. Here the grant is of "all timber" which was reserved in the lease of April 5, 1923, then belonging to Wingate. This instrument conveys only the timber reserved by that lease, and nothing more. So it conveys to Reynolds all timber on the 60-acre tract, whether living or dead, standing or fallen, and conveys to Reynolds all the green trees reserved for the plantation purposes mentioned in the lease contract. So Reynolds acquired title to all the green timber on the lands contained in the lease and belonging to Wingate, with the exception of the pine timber on the three-acre tract and the hardwood timber on the strip of land between the road south of Wingate's dwelling and the field south of said road. But the deed of December 17, 1925, then modifies the reservation of timber for plantation purposes in the lease contract, so as to make this reservation apply only to the dead timber on that part of the place owned by Wingate. This modification of the lease contract reserved to Wingate only the dead timber standing on the part of the place

belonging to the grantor, and only so much of the standing dead trees as was necessary for the purposes mentioned. The deed of December 17, 1925, does not convey to Reynolds trees which were dead and which had fallen at the date of its execution. So the effect of the lease of April 5, 1923, and of the deed of December 17, 1925, was to convey to Reynolds, with the exception of the pine timber on the three-acre tract and the hardwood on the strip south of Wingate's residence, all trees standing on the tracts of land described in the lease contract of April 5, 1923, and all trees on the 60-acre tract, which were suitable, at the times of these respective grants, for use in the manufacture of lumber or material for building, manufacturing, and kindred purposes, with a reservation of so much of the standing dead trees as are necessary for the plantation purposes aforesaid. So Reynolds is entitled to all the timber trees on these lands, except the pine trees and hardwood on the two excepted tracts, and with the further exception of so much of the standing dead trees thereon as may be necessary for the plantation purposes enumerated in the lease contract.

3. It is insisted that in construing the grant of timber under the lease contract of April 5, 1923, we should substitute the word "or" for the word "and," in the granting clause, so as to make that clause read "all of the timber of every kind and description growing, or being upon" the described lots of land. It is true that in the construction of statutes it is sometimes found necessary to read the conjunctions "or" and "and," one for the other. *Clay* v. *Central Railroad &c. Co.,* 84 *Ga.* 345 (10 S. E. 967); *Smith* v. *Hatcher,* 102 *Ga.* 158, 160 (29 S. E. 162). So in the construction of a provision of a will, "or" has been construed "and." *Tennell* v. *Ford,* 30 *Ga.* 707. "Or" has likewise been construed to mean "and" in different kinds of private writings, such as deeds, bonds, or leases, but with considerable less frequency in such instruments than in deeds. 29 Cyc. 1505, B, 3. In order to effectuate the intention of the parties to an instrument, the word "and" is some times construed to mean "or." Ordinarily these words are in no sense interchangeable terms. On the contrary, they are used in the structure of language for purposes entirely dissimilar and variant. The substitution of "or" for "and" should never be resorted to except for strong reasons, and the word

should never be so construed unless the context favors such substitution. 2 C. J. 1338, § 2. There is nothing in the context to indicate that the word "and" was used for the word "or" in the granting clause of the lease contract of April 5, 1923. There is no doubt or ambiguity about the language used which would require the substitution suggested. The language of the grant is plain. So we do not think that we would be justified in substituting "or" for "and" in the granting clause of the lease contract.

4. So we are of the opinion that the trial judge did not err, as against the plaintiff, in holding that these two instruments did not, singly or jointly, convey to the plaintiff trees which were dead and had fallen prior to the date of the lease contract.

*Judgment affirmed. All the Justices concur.*