## 57679. HOWARD et al. v. HOWARD.

QUILLIAN, Presiding Judge.

Delmont Howard died testate, November 18, 1974. His estate was valued at $176,809 for estate tax purposes. He bequeathed to his wife, Tommye Louise Howard, $5,000 in cash, the household goods, and a life estate in their home, unless she sooner remarried. This bequest was in lieu of dower and year's support rights. Tommye Howard made application for year's support and the appraisers awarded her $25,000 in cash together with the household furniture. A caveat was filed by the executors of the estate. The probate court entered judgment for $6,000, together with the household furniture.

Mrs. Howard filed an appeal to the superior court and the jury awarded her $45,000 in cash and 3 tracts of land which comprised a portion of the farm where she and her husband had lived. An amended motion for new trial was denied and the caveators appeal. *Held:*

1. The caveators contend the jury award was "contrary to the evidence and excessive." We do not agree. Code Ann. § 113-1002 (Code § 113-1002, as amended.) provides for "the support of the family . . . a widow [with no minor children in the instant case] . . . either in property or money, a sufficiency from the estate for their support and maintenance for the space of 12 months . . . to be estimated according to the circumstances and standing of the family previous to the death of the testator or intestate and keeping in view also the solvency of the estate."

Each side presented evidence of the Howards' mode of living prior to the death of the deceased. The caveators presented evidence of a sparse and modest existence of the couple. Mrs. Howard's lawyer painted a life "in a beautiful and gracious antebellum home surrounded by magnolia trees, with nearby springs from which guests picked watercress; their home was surrounded by a large farm of

approximately 150 acres (275 head of cattle, 25-30,000 bales of hay, a 'terrific garden' with an overflow of vegetables) which produced for them both income and food . . . [and] also enabled them to generously bestow gifts of the excess produce upon the many family members and friends they frequently entertained."

We will not pass on the weight of the evidence — only the sufficiency, and if there is any evidence to sustain the jury's verdict an appellate court will not disturb it. *Worn v. Sea-Cold Services,* 135 Ga. App. 256 (2) (217 SE2d 425). The jury heard and construed the evidence and was properly instructed as to this issue. They are the final arbiters as to credibility. *Crider v. Scoma,* 142 Ga. App. 413, 414 (236 SE2d 150). We refuse to speculate on which evidence the jury chose to believe or disbelieve, for on appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. *Smith v. Hornbuckle,* 140 Ga. App. 871, 875 (232 SE2d 149). Another general principle applies to the instant case. When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, an appellate court is extremely reluctant to set it aside as being excessive. *Carter v. Carter,* 139 Ga. App. 548, 551 (228 SE2d 708).

Our Supreme Court has stated: " 'This court has always regarded such claims [year's support] favorably, as will clearly appear from the following cases, to which many others, if necessary, might be added: [Cits.]' . . . 'A year's support is an anomaly and special favorite of our legislation and jurisprudence;' . . . 'The statutes providing for a year's support and fixing its priority are to be construed liberally in favor of the dependents.' " *Rimes v. Graham,* 199 Ga. 406, 409-410 (34 SE2d 443); accord, *Grant v. Sosebee,* 169 Ga. 658 (1) (151 SE 336); *Olmstead v. Clark,* 181 Ga. 478 (3) (182 SE 513); *Johnson v. City of Blackshear,* 196 Ga. 652, 657 (27 SE2d 316).

We do not find the jury verdict excessive as a matter of law, nor of such size as to seriously erode the solvency of

the estate, valued at $176,809 for tax purposes — particularly when Mrs. Howard testified that at the time of her husband's death there were approximately "two hundred and seventy-five" head of cattle and "25,000 to 30,000 bales of hay" — which the appraisers valued at: "Hay . . . $150 . . . Cattle — 70 Head . . . $11,200 . . ." The evidence of record supports the finding of the jury. This enumeration is without merit.

2. We will next consider the fourth enumeration of error as it is dispositive of the second and third enumerations. The caveators allege the trial court erred in charging the jury "such amount as you determine should be set aside as a year's support for the widow in this case may be either in money or property *or money and property*." (Emphasis supplied.)

The wording of the statute is as follows: "it shall be the duty of such appraisers, or a majority of them to set apart and assign to such widow . . . *either in property or money,* a sufficiency from the estate for their support and maintenance for the space of 12 months . . . " Code Ann. § 113-1002, supra. (Emphasis supplied.) The issue is whether a jury may set aside only property, or only a monetary amount, or may they set aside property and money?

"The word 'or' as used in a statute should be construed as 'and' when necessary to give effect to the intention of the legislature as manifested by the context and the circumstances . . ." *Comer v. American Tel. & Tel. Co.,* 176 Ga. 651 (2) (168 SE 786); accord, *Tennell v. Ford,* 30 Ga. 707 (2); *Clay v. Central R. &c. of Ga.,* 84 Ga. 345 (1) (10 SE 967); *Reynolds v. Wingate,* 164 Ga. 317, 323 (138 SE 666).

Looking to the whole statute, the legislature authorized — where the value of the estate does not exceed $1,600 "to set apart the whole of said estate . . . " This authorized the award of money, personalty and realty. Further, the Supreme Court held that where the estate exceeds the minimum value, that sum "does not inhibit the setting aside of the whole estate . . ." *Edwards v. Addision,* 187 Ga. 756 (3) (2 SE2d 77).

Both of our appellate courts have held a similar charge to the jury, which authorized the award of money

and realty, was not error. *Daniel v. Daniel,* 87 Ga. App. 325, 327 (73 SE2d 591); *Casey v. Casey,* 151 Ga. 169 (6) (106 SE 119). Accordingly, the fourth enumerated error is without merit. For the same reason, the third enumeration alleging the award of money and property was error is also without merit.

The second enumerated error asserts the trial court was without jurisdiction to decide disputed claims to property. This argument is based on the testimony of Mrs. Howard that her husband "purchased" the "Mitchell farm" but she "paid" for it. Her testimony revealed that both she and her husband earned money and it was commingled in different bank accounts. Mrs. Howard testified that when the "Mitchell" farm was purchased her husband was given a quitclaim deed with both their names on it but she made her husband return and get a "guaranteed title." However, the latter deed was only in the name of Mr. Howard. She testified that she worked at the "Barwick Mill" and at "Rossville Yarn." She stated that she also "drove the tractors, . . . hauled the hay, drove the hay trucks, helped work on the ground with machinery, whatever was deemed necessary, that's what I did." She raised the vegetables, sold them, and froze or "preserved" the remainder. She collected antique furniture and testified that it had taken her thirty years to acquire all of her pieces.

We do not view Mrs. Howard's testimony as attempting to establish a title dispute — only what she had contributed to the estate. If we were to adopt the caveators' view, any property — real or personal, which was acquired during coverture and the wife was depositing her funds into a common banking account from which personalty or realty was acquired, could never be awarded to the wife. Both husband and wife contributed to the account from which property was purchased. This does not establish a title dispute. The statute, Code Ann. § 113-1002, provides that year's support can be awarded from the property of the estate — including "household furniture" which is normally acquired during coverture and could be said to be owned in common. Designation of such furniture is authorized by the statute to be a part of "year's support" and is not subject to this objection. The

award of property belonging to the husband's estate, to the wife as a portion of year's support, is not necessarily a settlement of a disputed claim — even where the wife has contributed to its purchase price. The burden is on the caveators to establish their claim of error by the record and we find nothing but an award by the jury of property in the deceased's name, which was part of his estate, properly awarded to his widow as a portion of her year's support. We find no merit to any of these enumerations.

3. It is alleged that Mrs. Howard "elected to take a bequest of $5,000.00 under the Last Will and Testament of Delmont Howard, deceased, and she was therefore estopped to maintain an action for a year's support." We have found no evidence of an election by the widow to take under the will and counsel has not directed our attention to any portion of the record which supports such conclusion. They argue that because she withdrew money from the joint checking account of Mrs. Howard and her deceased husband, after his death, that was an election to take under the will. We can not agree.

The U.S. estate tax return filed by the *caveators,* showed in two places that "the surviving spouse renounced the will and elected to take dower, curtesy, or a statutory interest . . ."

Mrs. Howard testified that she had worked in two local "yarn mills," sold vegetables from her garden and deposited her funds in her and her husband's bank accounts. She stated that her husband placed "everything he had and part of what I had in his name in the Chickamauga Bank, I put what I had in American Bank and Hamilton Bank in a joint account." The caveators' evidence showed that the two latter accounts were joint accounts. One signature card was marked: "right of survivorship." Mrs. Howard stated that she withdrew funds from the joint accounts after her husband's death, but the caveators had possession of the farm and she was living with a friend, an "LPN" nurse, who cared for her during various illnesses. Her medical condition at that time was "real bad." She had pneumonia, asthma, angina, bronchitis, rheumatoid arthritis, low back pain and depression. She had four major operations during the year following her husband's death. Her gall bladder was

removed and she also had a "seventy-five percent gastroectomy . . ." Her doctor confirmed the illness for which he treated her and that he referred her to other doctors. The nurse testified that she provided Mrs. Howard "breathing treatments, oxygen, shots and medication." She was of the opinion that the costs of Mrs. Howard's *drugs* for the year following her husband's death was "two or three hundred dollars a month at least." It is readily ascertainable why Mrs. Howard withdrew funds from joint accounts the year following her husband's death, where she was without income, ill, had four major operations and required drugs costing between $200 to $300 per month.

Pretermitting the issue of right of survivorship in joint accounts, it may subsequently be held that the widow withdrew more than her portion of the joint account — and thus may be liable to the estate for an undetermined amount. However, we decline to hold that withdrawal of funds by a widow from a *joint* checking account with her deceased husband, after his death, is tantamount to an election to take under the will of her deceased husband, particularly where, as here, there was evidence of excessive medical expenses of the widow following her husband's death. This enumeration is without merit.

4. We find no error for the failure to charge the requested charge number 5 of the caveators where the same issue was properly covered by the instructions of the court. *Moody v. Moody,* 241 Ga. 286 (2) (244 SE2d 875).

5. In view of our holdings above, we find the trial court did not err in failing to grant the caveators' motion for new trial.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

ARGUED APRIL 5, 1979 — DECIDED JUNE 5, 1979.

*Shaw & Shaw, George P. Shaw, Frank M. Gleason,* for appellants.

*Brown, Harriss, Hartman & Ruskaup, Burton Brown, Larry D. Ruskaup,* for appellee.