### 39609. DEAN et al. v. GREAT NORTHERN NEKOOSA CORPORATION et al.

WELTNER, Justice.

The Deans by warranty deed conveyed to Baker certain land and "all trees and timber." Baker reconveyed the land to the Deans by security deed, but expressly excluded from that conveyance the "trees and timber." Baker then conveyed "all merchantable timber" to Louisiana Pacific Corporation, which was succeeded in interest by Great Northern Nekoosa Corporation.

Baker defaulted on his first loan installment. The Deans next acquired an unqualified warranty deed from Baker and foreclosed Baker's interest under the security deed.

The Deans filed this action against Great Northern and a logger to enjoin further cutting of trees and to collect monetary damages for trees already cut.

1. The basic precept to this controversy is stated in *North Ga.*

*Co. v. Bebee,* 128 Ga. 563, 566 (57 SE 873) (1907), as follows: "The paramount consideration in the construction of every instrument conveying growing trees, with the right to cut and remove them, is the intention of the parties as contained in the writing." When the duration of the right of entry to cut and remove trees is not expressly recited in the agreement, the court must determine whether the parties intended for the grantee to have only a reasonable period of time in which to cut and remove trees, or whether the parties intended, instead, that the grantee should have perpetual right of entry to cut and remove trees. *North Ga. Co. v. Bebee,* supra, at 566. If a reasonable time for removal was intended, the question of what is a reasonable time under the particulars of the agreement generally is a question of fact for a jury. *Mills & Williams v. Ivey,* 3 Ga. App. 557 (3) (60 SE 299) (1907). Indefinite or perpetual rights of entry are not favored where standing timber but not the land is conveyed, but will be recognized when "it is plainly manifest from the terms of the deed that such was the intention of the parties." In *Bebee,* supra, a perpetual right of entry to cut and remove trees was declared because the grant of the standing trees was to the "party of the second part, his heirs and assigns forever," and because there was "annexed to the grant the full and unreserved right of way over all lands of the grantor, now owned or which may be subsequently owned, for the manufacture and removal, *at any time,* of the timber purchased," and because the grantor further provided that the grantee "shall have the right to cut and use *at any time* all of the grantor's timber necessary for the manufacture and removal of the trees sold." 128 Ga. at 566.

The Deans contend that Baker had no more than a reasonable time for removal of the trees because Baker's reservation in the security deed of the trees and timber was not accompanied by an express reservation of a right of ingress and egress over the land for a specific period of time. This contention ignores the fact that Baker had a warranty deed to the *land as well as to the standing trees,* which gave him the perpetual rights of possession, ingress to, and egress from the land.

We agree with the timber companies. At the time of Baker's conveyance to Louisiana Pacific Corporation of "all merchantable timber," together with his conveyance to that company of a right of ingress and egress for eight years for cutting and removal of the timber, Baker owned "all trees and timber" on the land "forever in fee simple" together with perpetual rights of possession, ingress and egress for purposes of removing "all trees and timber." Accordingly, Baker's deed to the timber company passed title to the trees, which title could not be affected by his subsequent reconveyance to the Deans. The Deans, as grantors, by necessity knew of the former deed

before they accepted the latter reconveyance. *Copelin v. Williams,* 152 Ga. 692 (111 SE 186) (1921).

The trial court did not err by granting partial summary judgment determining that Great Northern as successor in interest to Baker acquired the right to cut and remove "all merchantable timber" on the land within a period of eight years.

2. The Deans next contend that Baker's warranty deed conveyed to them all trees that did not meet the definition of "merchantable timber," and that "merchantable timber" has a fixed and invariable meaning under Georgia law which includes trees which can be sawed into boards, but excludes trees which only can be utilized in some type of pulverizing or chip product process. *Parham v. Robins,* 197 Ga. 386, 391 (29 SE2d 608) (1944).

The word "merchantable" adds very little to the definition of "timber" because its legal meaning is its common meaning, which is "saleable." *Parham v. Robins,* supra, at 391. The word "timber" does not have a fixed and unambiguous meaning in the laws of Georgia. Quite to the contrary, the word "timber" standing alone in a contract "without qualifying, limiting, or definitive words . . . may designate wood suitable for building houses, or ships, or for use in carpentry, or trees cut down and squared, or capable of being squared or cut into beams, rafters, boards, and other lumber, *or growing trees suitable for constructive uses, or trees generally." Reynolds v. Wingate,* 164 Ga. 317, 321 (138 SE 666) (1927). (Emphasis supplied.) Other cases repeat this definition of "timber" in substantially identical words. *Vandiver v. Byrd-Matthews Lumber Co.,* 146 Ga. 113, 116 (90 SE 960) (1916); *Pennington v. Avera,* 124 Ga. 147, 149 (52 SE 324) (1905); *Dorsey v. Clements,* 202 Ga. 820, 822 (44 SE2d 783) (1947). The word "timber" acquires meaning in particular agreements because of the context in which it is used. For instance, in *Parham v. Robins,* supra, the court held that timber fit for sawmill purposes was intended because the agreement specifically authorized sawmills to be located on the land "for the purpose of manufacturing timber into lumber." 197 Ga. at 391. Other agreements have been much more specific by referring to timber "suitable for sawmill purposes" and by specifying minimum tree trunk diameter at a specified height of the tree above the ground. *Handcock v. Massee & Felton Lumber Co.,* 127 Ga. 698 (56 SE 1021) (1906).

The trial court did not err by failing to restrict the cutting and removal of trees to those of sufficient size to be sawed into lumber.

3. At the time of their transactions, there was no unclarity between Baker, the timber companies and the logger over the meaning of the term "merchantable timber" as used in their contracts. The Deans seek to limit the scope of those words although

they are not parties to any of those contracts. The trial court did not err by receiving expert testimony in regard to which sizes of trees met the contract definition of "merchantable timber." *Dorsey v. Clements,* supra, at 827.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 6, 1983 —
REHEARING DENIED JUNE 28, 1983.

*Bowles & Bowles, Jesse G. Bowles,* for appellants.
*Stone & Stone, William S. Stone, Charles L. Goodson,* for appellees.