2007 WY 87

**ECOSYSTEM RESOURCES, L.C.,**
**Appellant (Defendant),**

v.

**BROADBENT LAND & RESOURCES,**
**L.L.C., Appellee (Plaintiff).**

No. 05–277.

Supreme Court of Wyoming.

May 23, 2007.

Representing Appellant: Phillip William Lear of Lear & Lear, L.L.P., Salt Lake City, Utah.

Representing Appellee: Clayton B. Thomas, Evanston, Wyoming; M. David Eckersley of Prince, Yeates & Geldzahler, Salt Lake City, Utah. Argument by Mr. Eckersley.

\* Chief Justice at time of oral argument.

Before VOIGT, C.J., and GOLDEN, HILL \*, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   In the early 1900s, Union Pacific Railroad Company (Union Pacific) conveyed real property located in Uinta County to Broadbent Land & Resources, LLC's (Broadbent) predecessors in interest, but reserved and excepted "all timber" on said lands.   Nearly one hundred years later, Ecosystem Resources, L.C. (Ecosystem) acquired the timber rights and proceeded to harvest the timber.   As surface owner, Broadbent asked the district court to quiet title to the timber in it.   Relying on a rule of law adopted in other jurisdictions, Broadbent argued that, because Union Pacific's timber interests were not expressly made perpetual in the deeds, they were limited to a reasonable time and more than a reasonable time had passed since Union Pacific reserved its timber interests.   The district court agreed with Broadbent and granted its motion for judgment on the pleadings declaring Ecosystem's timber interests had lapsed and title to the timber reverted to the surface land owner, Broadbent.

[¶ 2]   On appeal, we are called upon to determine, as a matter of first impression, the duration of an interest in timber created in a deed when no time limit is set out in the language of the deed.   We reject a rigid rule of interpretation which does not consider the parties' intent.   Instead, we reverse the district court's judgment on the pleadings and remand for consideration of evidence of the facts and circumstances surrounding execution of the deeds.

## ISSUES

[¶ 3]   Ecosystem presents the following issues for review on appeal:

1.   Did the trial court err as a matter of law in holding that a reservation of "all timber" created an estate in timber limited to a reasonable time rather than an estate in perpetuity?

2. Assuming Wyoming law requires words of duration to create a perpetual timber easement, did the trial court err in holding that the reservation did not contain such language?

Broadbent does not offer a separate statement of the issues.

## FACTS

[¶ 4] In 1908, Union Pacific executed a warranty deed granting 15,941 acres in Uinta County, Wyoming to Heber Land and Livestock Company in consideration for $7,970.57. The deed contained the following language:

> Excepting and reserving to Union Pacific Railroad Company, the exclusive right to cut and remove all timber from said land and the right of ingress, egress and regress upon said land, and the right to use as much of the surface thereof as may be necessary for the proper conduct of said business thereon. . . .

[¶ 5] In 1909, Union Pacific executed a warranty deed granting approximately 5,037 acres to James Chesney in exchange for $3,779.52. The deed excepted and reserved to "Union Pacific Railroad Company, its successors and assigns" "all timber" on the land, together with the "exclusive right to cut and remove" it from the land, the "right of ingress, egress and regress" upon the land and the right to use so much of the surface as necessary to properly conduct its business.

[¶ 6] Ecosystem is the successor in interest to Union Pacific's interests, and Broadbent is the successor in interest to Heber's and Chesney's interests. In 2005, Ecosystem communicated its plans to harvest the timber, prompting Broadbent to file a complaint seeking to have Ecosystem's timber rights under the deeds extinguished and title to the timber quieted in it. Broadbent argued that Union Pacific and its successors were required to remove the timber within a reasonable time and, having failed to do so, lost the timber rights.

[¶ 7] Ecosystem answered claiming its timber rights were perpetual and counterclaimed seeking quiet title. Broadbent filed a motion for judgment on the pleadings. Ecosystem responded arguing the plain language of the deeds reserved a perpetual right to the timber, and the district court should consider the facts and circumstances surrounding execution of the deeds before implying a "reasonable time" limitation into the deeds. To that end, Ecosystem proffered evidence about the nature of the railroad's business operations at the time the deeds were executed and the need to have a sufficient supply of timber to sustain those operations. It also presented evidence suggesting the grantees paid a lower price for their properties because of the reservations included in the deeds. The district court did not consider Ecosystem's evidence. Instead, it granted Broadbent's motion for judgment on the pleadings holding, as a matter of law, because the timber reservations were "silent as to their duration" they were for a reasonable amount of time; ninety-five years was an unreasonable amount of time; the reservations lapsed; and, consequently, Broadbent owned the timber situate on the lands.

## STANDARD OF REVIEW

[¶ 8] We review a district court's decision granting a judgment on the pleadings, pursuant to W.R.C.P. 12(c), *de novo* by applying the same standards used by the district court in ruling on the motion. *See, Box L Corp. v. Teton County*, 2004 WY 75, ¶ 2, 92 P.3d 811, 813 (Wyo.2004); *Rodriguez v. Casey*, 2002 WY 111, ¶ 4, 50 P.3d 323, 325 (Wyo.2002):

> A defendant is entitled to judgment on the pleadings if the undisputed facts appearing in the pleadings, supplemented by any facts of which the district court may take judicial notice, establish that no relief can be granted. A judgment on the pleadings is appropriate if all material allegations of fact are admitted in the pleadings and only questions of law remain.

*Greeves v. Rosenbaum*, 965 P.2d 669, 671 (Wyo.1998) (citations omitted). Review of a judgment on the pleadings is akin to review of a dismissal under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Id.* at 672. The facts are reviewed in the light most favorable to the party opposing the motion and the motion is granted only if "those facts dictate that judg-

ment should be entered as a matter of law." *Wilson v. Town of Alpine,* 2005 WY 57, ¶ 4, 111 P.3d 290, 291 (Wyo.2005). If an issue of fact exists, the motion should not be granted. *Reno v. Reno,* 626 P.2d 552, 554 (Wyo.1981).

## DISCUSSION

[¶ 9] We are charged with interpreting Union Pacific's deeds to determine the duration of the timber interests reserved in those documents. Although we have never had occasion to address this issue before,[1] a well-established paradigm for interpreting deeds exists to guide our analysis. Our deed interpretation rules focus on deriving the intentions of the parties. *Mullinnix LLC v. HKB Royalty Trust,* 2006 WY 14, ¶ 22, 126 P.3d 909, 919 (Wyo.2006); *Caballo Coal Co. v. Fid. Exploration & Prod. Co.,* 2004 WY 6, ¶ 11, 84 P.3d 311, 314 (Wyo.2004). We start with the language utilized by the parties to the deed, giving that language its plain and ordinary meaning. *Hickman v. Groves,* 2003 WY 76, ¶ 6, 71 P.3d 256, 258 (Wyo.2003). If the language is clear and unambiguous, we look only to the "four corners" of the deed in ascertaining the parties' intent. *Caballo Coal,* ¶ 11, 84 P.3d at 314.

[¶ 10] However, we have also recognized that, even if a contract is unambiguous, we can examine evidence of the circumstances surrounding the execution of the deed to arrive at the parties' intent. *Hickman,* ¶¶ 6–11, 71 P.3d at 257–58. Relevant considerations may include the relationship of the parties, the subject matter of the contract, and the parties' purpose in making the contract. *Id.*

> [I]t has long been the law that we look to the meaning of terms at the time of execution of an unambiguous deed. In 1899, we stated in *Balch,* 9 Wyo. at 29, 59 P. at 436: "The rule in such cases [involving deed interpretation] is that the intention of the parties is to be ascertained by considering all the provisions of the deed, *as well as the situation of the parties,* and then to give effect to such intention if practicable." (emphasis added). Understanding the importance of the use of "surrounding circumstances" evidence is not difficult when you take into account the definition of "plain meaning" as used in contract interpretation cases. The "plain meaning [of a contract's language] is that 'meaning which [the] language would convey to reasonable persons *at the time and place of its use.*' " *Newman,* ¶ 12, 53 P.3d at 544, quoting *Moncrief v. Louisiana Land and Exploration Company,* 861 P.2d 516, 524 (Wyo. 1993) (emphasis added).

*Mullinnix,* ¶ 23, 126 P.3d at 919.

[¶ 11] The plain language included in Union Pacific's deeds reserved "all timber" and did not limit the time for removing the timber. Nevertheless, the district court accepted Broadbent's claim that there is a general rule across the country which states that, unless expressly made perpetual, a timber right created by contract or deed will be interpreted as expiring after a reasonable time for removing the timber has passed. Ruling from the bench after the parties argued the motion for a judgment on the pleadings, the district court stated:

> The question presented is whether the reservation of the timber rights runs in perpetuity without an express reservation that contains the language in perpetuity. The majority rule appears to be that a conveyed or reserved right to growing timber is a terminable estate unless a specific term of years or a perpetual right is stated in the document of conveyance. Here, there is no such language. If there is no language defining the period of time the timber may be harvested, then it must be a reasonable time. Ordinarily, what is reasonable is a question of fact unless reasonable minds could not differ. The Court finds as a matter of law that ninety-nine years or ninety-seven years, the period of

---

1. In *Cundy v. Range Tel. Coop., Inc.,* 2005 WY 153, ¶ 28, n. 9, 123 P.3d 901, 911, n. 9 (Wyo. 2005), we responded to Cundy's argument that he was the successor in interest to a reservation of perpetual timber rights as follows: "This issue was not dispositively litigated in this case, but we point our readers' attention to authorities which suggest that timber rights may not be construed as perpetual unless that was clearly the intent of the grantor." *Id.* (citations omitted). It is obvious that our statement in *Cundy* was simply dicta and, consequently, does not bind us to any particular rule of law in this case.

time that has lapsed between the execution of the deeds and the present time, is not a reasonable period of time.

[¶ 12] Ecosystem challenges the district court's application of the "reasonable time" rule on several fronts. Relying on Wyo. Stat. Ann. § 34–2–101 (LexisNexis 2005), Ecosystem argues all of an interest in real property passes with a grant or is retained in a reservation unless the intent to pass or reserve a lesser estate is clearly expressed in the instrument. Section 34–2–101 states:

> The term "heirs", or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant.

The statute is substantially the same today as it was when the deeds were executed. *See,* R.S. 1899 § 2737.

[¶ 13] As we understand it, Ecosystem is arguing that, under § 34–2–101, Union Pacific **reserved** the largest estate possible, i.e. a perpetual fee simple interest in the timber. However, the statute could also be read in favor of the grantee and against the grantor's reservation, compelling the conclusion that Union Pacific **granted** the greatest estate possible when it conveyed the surface lands and, therefore, only reserved the timber for a reasonable time. Rather than spend too much time trying to discern the proper interpretation of "all the estate," we turn to the next provision of the statute which specifically directs us back to the lynchpin of deed interpretation—the parties' intent. Although the statute does little to advance the analysis in this case, it does reiterate the importance of the parties' intentions in interpreting deeds.

[¶ 14] Ecosystem also argues that the district court should not have eschewed this Court's approach to interpreting deeds in favor of an approach that mechanically applies the reasonable time rule. We recognize it is tempting to resolve this case by jumping directly to the cases from other jurisdictions interpreting timber deeds. However, it is important to determine how those cases fit into our well established deed interpretation jurisprudence before considering or adopting their rationale. Consequently, although we will discuss the cases from other jurisdictions, we will do so in the context of applying this court's oft-stated deed interpretation principles.

[¶ 15] Starting with the plain language of the deeds, we note the two Union Pacific deeds used similar language in excepting and reserving the timber interests. The deeds excepted and reserved [2] to Union Pacific the exclusive right to cut and remove all timber from the land, the right of ingress, egress and regress upon said land, and the right to use as much of the surface as necessary to properly conduct its business thereon. The only material difference between the reservations in the two deeds is that the 1909 deed expanded the reservation to Union Pacific's successors and assigns.

[¶ 16] The existence or absence of certain terms in the document creating a timber interest has been considered important to courts in determining the duration of the interest when no time is specifically stated in the document. *See,* Annotation, "Rights of parties to a timber contract within the time fixed or within a reasonable time", 15 A.L.R. 41 (1921), and cases cited therein for a discussion of relevant cases and the terminology employed in various documents. For example, use of the term "forever" in describing the timber interest has been interpreted as important in creating a perpetual right to the timber. *See, e.g., Baker v. Kenney,* 145 Iowa

---

**2.** Union Pacific *excepted* and *reserved* the timber interests. Some cases from other jurisdictions discuss the legal distinction between an exception and a reservation in deeds and suggest that, in certain cases, the distinction could be important in determining the duration of a timber interest. *See, e.g., Bardon v. O'Brien,* 140 Wis. 191, 120 N.W. 827 (1909); *Gabbard v. Sheffield,* 179 Ky. 442, 200 S.W. 940 (Ky.Ct.App.1918);

*Walters v. Sheffield,* 75 Fla. 505, 78 So. 539 (1918). *See also, Holland v. Windsor,* 461 P.2d 47 (Wyo.1969) (discussing the difference between an exception and reservation under Wyoming law, but not in the context of timber rights). In this case, the distinction is not helpful since the deeds both "except" and "reserve" the timber interest.

638, 124 N.W. 901, 904 (Iowa 1910); *Dean v. Great Northern Nekoosa Corp.*, 251 Ga. 131, 303 S.E.2d 445, 447–48 (1983). Words indicating that the parties were referring only to presently existing timber, such as "merchantable timber" or timber "standing," "growing," or "being" at the time of the deed, have been construed as reflecting an intention to limit the timber interest to a reasonable time. *See, e.g., Person v. Elmblad*, 1 Mich.App. 402, 136 N.W.2d 741 (1965); Annotation, *supra*, at 51–59, and cases cited therein. In contrast, words indicating the parties intended to extend the grant to timber grown in the future have been held to confer a perpetual interest in timber in other cases. *See, e.g., Franke v. Welch*, 254 Or. 149, 458 P.2d 441, 443–44 (1969). Some courts have identified the omission or incorporation of words of inheritance as important in determining the duration of the timber right. *See, e.g., State ex rel. Oklahoma Planning & Res. Bd. v. Smith*, 317 P.2d 219, 223–24 (Okla.1957). Language indicating the parties intended the timber to be removed from the surface has been construed as limiting the timber interest to a reasonable time. *See discussion in Gabbard*, 200 S.W. at 944–45. Courts have also looked to language defining the timber holder's right to access his timber across the surface owner's other lands as important in determining the duration of the timber interest. *See, e.g., Clyde v. Walker*, 220 Or. 137, 348 P.2d 1104 (1960).

[¶ 17] The Union Pacific deeds contain some of the terms referenced in the above referenced cases, but do not contain others. The deeds do include the term "forever" in the context of the duration of the grant, but the term does not clearly apply to the reservations. Thus, the failure to specifically use the word "forever" in the reservation may weigh in favor of a finding that the timber interest was limited to a reasonable time. On the other hand, the reservations referred to "all timber" and did not limit the rights to standing timber or timber "in being" at the time of the deeds. The "all timber" language suggests the grant may have been intended to be perpetual. To further complicate the analysis, one of the deeds contains language indicating the timber interest is to inure to Union Pacific's successors and assigns, but the other does not.

[¶ 18] Union Pacific clearly intended to retain the right to "cut and remove" the timber from the land. Some cases indicate that, when removal of the timber is contemplated in the conveyance, such removal must occur in a reasonable time. *See, Gabbard*, 200 S.W. at 943–44; *Hicks v. Phillips*, 146 Ky. 305, 142 S.W. 394, 395 (Ky.Ct.App.1912). However, the Montana Supreme Court rejected such an argument. stating:

> This argument makes a grant of timber in perpetuity well-nigh impossible, since removal is contemplated at some time during the life of the timber in almost every case.

*R.M. Cobban Realty Co. v. Donlan*, 51 Mont. 58, 149 P. 484, 487 (1915). Many of the cases we have read involved a dispute over which party (the timber right holder or the surface owner) was entitled to remove the timber. *See*, Annotation, *supra*, at 41, and cases cited herein. We, therefore, agree with the Montana Supreme Court that it is not particularly helpful to look at whether the parties intended the timber to be removed in determining whether the grant was perpetual or only for a "reasonable time" because the right to remove the timber will nearly always be of importance to the timber right holder.

[¶ 19] Finally, in determining the duration of the timber estate, some cases have considered language which accompanied the timber grant or reservation giving the timber interest owner the right to access its timber lands over other property belonging to the surface owner. *See, e.g., Clyde*, 348 P.2d at 1106; *Donlan*, 149 P. at 487. In the case at bar, Union Pacific reserved the rights to "ingress, egress and regress" across the surface owners' estate in order to make use of its reserved timber interests. Ecosystem argues the term "regress" indicates Union Pacific's intent to retain the right to the timber in perpetuity. The definition of "regress" regarding property is: "reentry or right of reentry." Webster's Third New International Dictionary 1913 (2000). This definition indicates Union Pacific had the right to repeatedly traverse the surface land to exploit its timber interests. It does not, however, expressly address the duration of the right.

[¶ 20] The plain language of the deeds does not limit the duration of the timber interests to a "reasonable time." Nevertheless, the district court resolved the case by applying the "reasonable time" rule found in cases from other jurisdictions but declined to consider Ecosystem's proffered evidence regarding the facts and circumstances surrounding the execution of the Union Pacific deeds, indicating that it could make its decision based upon the pleadings. We find this ruling perplexing because the district court did not simply rely on the pleadings or the plain language of the deeds in resolving this case, but, instead, relied on the judicially created "reasonable time" rule.

[¶ 21] Remaining true to our rules of deed interpretation, we note that the existence of a general rule at the time the deeds were executed implying a reasonable time limitation in timber deeds could be part of the facts and circumstances surrounding that execution and, consequently, reflective of the parties' intentions with regard to the duration of the deeds. Although Broadbent claims the "reasonable time" rule is "universal" and the district court characterized it as the "majority" rule, after reviewing many cases, we are not convinced the rule was a "universal" or, even a clear majority rule, in the United States in 1908 and 1909. While there were numerous cases decided in the same general time frame applying the "reasonable time" rule, *see, e.g., Lewison v. Axtell,* 196 Iowa 977, 195 N.W. 622 (Iowa 1923); *Berry v. Marion County Lumber Co.,* 108 S.C. 108, 93 S.E. 328 (1917); *Carson v. Three States Lumber Co.,* 108 Tenn. 681, 69 S.W. 320 (1902), there were also cases holding that a timber interest that is not expressly limited in time continues in perpetuity. *See, e.g., Walters v. Sheffield,* 75 Fla. 505, 78 So. 539 (1918); *Butterfield Lumber Co. v. Guy,* 92 Miss. 361, 46 So. 78 (1908); *Donlan,* 149 P. at 486–88; *Magnetic Ore Co. v. Marbury Lumber Co.,* 104 Ala. 465, 16 So. 632 (1894). *See also, Annotation, supra,* at 43–51 and cases cited therein.

[¶ 22] Even current treatises indicate there is no "universal rule." 52 Am.Jur.2d, *Logs & Timber,* § 47 (2007) states, in pertinent part:

There exists a difference of opinion whether a reservation or exception of timber gives the grantor of the land a title in perpetuity or a limited fee required to be exercised within a limited time by removal of the timber. While this is partly explainable by a difference in the phraseology of the instruments, it is also due in part to a difference in the rule of law applied. According to some courts, when a deed contains a clause reserving certain timber to the grantor of the land, without any provision as to the time of cutting or with nothing to indicate that a severance from the realty is contemplated, there is more than a mere reservation of the right to cut and remove timber; the grantor actually excepts the timber from the deed of the land, with the result that the title to it remains in the grantor and is not lost by a failure to cut and remove within a reasonable time. Some courts, however, require a plainly manifest intention to reserve a perpetual right of removal, on the ground that such a right is unreasonable.

On the other hand, other decisions take the view that when an exception of certain timber is inserted in a deed to land without any limitation of the time of its removal, a reasonable time only will be allowed for such removal.

(footnotes omitted).

[¶ 23] Moreover, the policy expressed by courts when adopting the "reasonable time" rule may or may not be applicable in Wyoming. The policy espoused for limiting the duration of a timber interest generally holds that it is unreasonable to perpetually burden the land with the timber interest because the surface owner cannot make use of his interest while the timber owner exploits his interest or until the timber is cleared from the land. *See, e.g., Davis v. Haslam Lumber Co.,* 213 S.W.2d 771, 780 (Tex.Civ.App.1948); *Smith,* 317 P.2d at 222–23; *Franke,* 458 P.2d at 442–43.

[¶ 24] In states which, unlike Wyoming, are heavily forested, it may be true that the surface owner could not make use of his interest until the timber was cleared from the land, and the failure of the timber interest owner to remove the timber in a reason-

able time would be unduly burdensome. In Wyoming, however, it is fair to say there are many properties which could be used simultaneously by the surface owner for uses such as grazing and the timber owner for logging or other forestry related purposes. *See generally, Baker,* 124 N.W. at 904 (recognizing that the surface owner of land burdened with a separate timber interest could still use his land for "pasture or for any other purpose not inconsistent with the preservation of the timber and growth of timber thereon.").

[¶ 25] Simultaneous use of different interests in the same real property is common in Wyoming. The severance of the mineral estate from the surface estate has routinely occurred, requiring the different interest owners to find a way to work together so they can simultaneously exploit their interests in the property. When faced with the argument that timber interests must be limited to a reasonable time in order to protect the surface owners' rights to the property, the Alabama Supreme Court could discern no reason why the duration of timber interests should be limited when mineral interests were not and, consequently, the court refused to apply the "reasonable time" rule to a deed which separately conveyed the timber interests in the land. *Magnetic Ore,* 16 So. at 633. Similarly, the Montana Supreme Court offered a cogent analysis of the issue:

> In its essentials, [the deed], conveying the timber with the right of entry to cut and remove the same, differs not from a grant or reservation of coal or minerals, with a similar right of entry to mine and remove. That such a grant or reservation, couched in terms employed in [the deed] would be absolute, no one would deny[.]

*Donlan,* 149 P. at 487.

[¶ 26] In addition to reserving the timber interests, the Union Pacific deeds in this case also excepted and reserved all coal and other minerals [3] within or underlying the lands conveyed. Ecosystem argues that, under Wyoming law, the reservation of minerals was perpetual and it would be improper to apply a different interpretation to the timber reservations by holding they were limited to a reasonable time. In general, we agree

that, unless the facts and circumstances surrounding execution of the Union Pacific deeds suggest otherwise, there is no reason to treat timber interests differently than mineral interests.

[¶ 27] One of the key cases Broadbent relies upon in support of its argument that the timber interests should be limited to a reasonable time is *United States v. State Box Co.,* 219 F.Supp. 684 (D.Cal.1963). The *State Box* case involved timber interests transferred to the railroad pursuant to federal law. *Id.* at 685. In 1902, the railroad sold its timber interests to a lumber operation. *Id.* State Box eventually acquired the timber interest originally belonging to the railroad. *Id.* However, in 1955, the federal government sold the same timber interest to the Grizzly Creek Lumber Company. *Id.*

[¶ 28] The case came before the federal district court on State Box's motion to recover the value of the timber removed by Grizzly Creek Lumber. *Id.* at 687. In resolving the case, the court noted that "all grants made by the United States 'must be construed favorably to the Government and that nothing passes but what is conveyed in clear and explicit language—inferences being resolved not against but for the Government.' " *Id.,* quoting *Caldwell v. United States,* 250 U.S. 14, 20, 39 S.Ct. 397, 398, 63 L.Ed. 816 (1919). The court also stated, "it must be assumed that Congress made such grants with knowledge of the common-law principle that such grants of timber must be removed within a reasonable time." *State Box,* 219 F.Supp. at 688. Relying on these principles, the court ruled that the railroad's interest in the timber had expired and the title to the timber reverted to the surface owner, the federal government. *Id.* at 690.

[¶ 29] *State Box* is readily distinguishable from the case at bar. There, the court was concerned with determining what rights the United States still held after transfer of some interests in the property to the railroad under a congressional grant. The federal government does not claim an interest in the timber at issue in this case. The rule of "strict construction" applicable to federal

---

3. The 1909 deed also specifically reserved "oil."    (Vol.I, p. 64).

land grants does not, therefore, apply. Moreover, the *State Box* court indicated the "reasonable time" rule was the common law rule, but it did not engage in a comprehensive analysis of case law to support that statement or even recognize that authority to the contrary existed. *Id.* at 688–89. For these reasons, *State Box* is not controlling of the issue before this Court.

[¶ 30]  Broadbent and the district court also referred to a 1997 ruling by the Wyoming federal district court in *Cottonwood Resources, L.C. v. Hamilton,* 97–CV–222–J (D.Wyo.1997) as support for implying the "reasonable time" limitation into the deeds at issue here. In *Cottonwood,* the federal court denied the plaintiff's motion for a temporary restraining order in a dispute over the rights to timber on Wyoming land. The plaintiff filed the underlying quiet title action, claiming it owned the timber rights to certain land because it was the successor in interest to Union Pacific's reservation of timber rights in 1906 and 1910 deeds. The defendants were the surface owners, i.e. the successors in interest to Union Pacific's grantees, and claimed they owned the timber because Union Pacific's right had expired when it failed to remove the timber within a reasonable time. The federal district court was unable to find any Wyoming case law on point. Relying on cases from other jurisdictions applying the "reasonable time" rule, the federal district court held the timber interest owner had failed to establish that it was likely to prevail on the merits and, consequently, denied its motion for a temporary order restraining the surface owner from removing the timber.

[¶ 31]  There are a number of similarities between *Cottonwood* and the case at bar, including the dates of the deeds involved and the fact that Union Pacific was the grantor who reserved the timber interest in the deeds. However, there are also a number of factors that distinguish the *Cottonwood* decision from the case at hand. First, *Cottonwood* arose in the very different procedural context of a motion for a temporary restraining order. Also, the federal district court did not rely upon nor apply our standards for construing deeds to discern the intent of the parties. Thus, we do not find the ruling in *Cottonwood* helpful in resolving this case.

[¶ 32]  If we were interpreting a simple contract or bill of sale for removal of standing timber, we would have no difficulty accepting the district court's decision that, when no time is specified for completion of the contract, it must be performed in a reasonable time. *See, e.g., Scherer Constr., LLC v. Hedquist Constr., Inc.,* 2001 WY 23, ¶ 32, 18 P.3d 645, 657 (Wyo.2001); *Zitterkopf v. Roussalis,* 546 P.2d 436, 439 (Wyo.1976). Indeed, it is settled law in Wyoming that ' "[w]here ... no time for performance is specified in a contract, the law implies performance must be within a reasonable time, and what is a reasonable time depends upon the circumstances of each case." ' *Scherer,* ¶ 32, 18 P.3d at 657, quoting *G.C.I., Inc. v. Haught,* 7 P.3d 906, 909 (Wyo.2000).

[¶ 33]  However, in this case we are asked to interpret deeds purporting to reserve "all timber" to the grantor. As the Montana Supreme Court noted in *Donlan,* 149 P. at 486, when it construed a timber deed, a deed is "an instrument customarily employed only for the conveyance of an interest in real estate and legally requisite for such purpose." Thus, we are reluctant to impose a reasonable time requirement unless we are convinced that was the general intent of the parties when they entered into the Union Pacific deeds at issue here.

[¶ 34]  After reviewing numerous cases, we conclude it would be imprudent, as well as inconsistent with our jurisprudence, to recite a general rule as to how long a timber interest should continue when there is no expression of duration in the conveying document. The vagaries in the language and the facts and circumstances of the deeds and contracts interpreted in cases from across the country can be used to distinguish any individual case from another. Adopting the "reasonable time" rule which is expressed in some, but certainly not all, of the cases from around the country throughout the nearly 100 years since the deeds were executed, without considering whether the "rule" was consistent with the general intent of the parties to the Union Pacific deeds, inflicts undue damage to our rules of deed interpretation. The district

court mistakenly eschewed the parties' intent in favor of applying a rigid "reasonable time" rule.

[¶ 35]   Wyoming precedent demands that courts look to the language of the deeds and, when appropriate, to the facts and circumstances surrounding their execution to determine the parties' intent.  Case law from other jurisdictions may be considered as part of the facts and circumstances surrounding execution of the deeds; however, in order to fulfill their proper role in our paradigm, the scope of cases relevant to determining the parties' intent should be limited to those interpreting timber deeds from the same era as the Union Pacific deeds.

[¶ 36]   While relevant case law may form part of the facts and circumstances, the nature of the parties, the type of land included in the deeds, and the purposes for the conveyances and/or reservations may also be important to determining the parties' intent. Ecosystem submitted other materials to the district court seeking to show the facts and circumstances surrounding the Union Pacific transfers which, it argued, supported a finding that the grants of timber rights were perpetual.  It proffered evidence about the nature of the railroad's use of timber in its business activities and the consideration paid by the surface owners for the conveyances. The district court should have considered all of the facts and circumstances surrounding execution of the Union Pacific deeds to determine the parties' general intent.

[¶ 37]   We reverse and remand for further proceedings consistent with this opinion.